**PRICE RIVER COAL CO. and Insurance Co. of North America, Employer-Carrier, Plaintiffs,**

v.

**The INDUSTRIAL COMMISSION OF UTAH and Marie T. Mabbutt, widow of Fred C. Mabbutt, deceased, Defendants.**

No. 20473.

Supreme Court of Utah.

Dec. 31, 1986.

James M. Elegante, Erie V. Boorman, Salt Lake City, for plaintiffs.

David L. Wilkinson, Atty. Gen., Virginius Dabney, Salt Lake City, for defendants.

ZIMMERMAN, Justice:

On December 20, 1984, the Industrial Commission through its administrative law judge issued findings of fact, conclusions of law, and an order allowing death benefits for applicant Marie J. Mabbutt, the widow of Fred C. Mabbutt, who died of a heart attack while working as a miner for plaintiff Price River Coal Co. ("PRC"). Mrs. Mabbutt's claim for compensation was based upon the Workers' Compensation Act, U.C.A., 1953, § 35–1–45 (1974 ed., Supp.1986), which allows compensation to "the dependents of every such employee who is killed, by accident arising out of or in the course of his employment." PRC's motion for reconsideration or review was denied by the Industrial Commission. PRC

thereupon filed this action for review. We remand for additional findings of fact.

Fred C. Mabbutt was found dead on October 23, 1981, at the end of his eight-hour shift as a belt attendant in PRC's underground coal mine in Helper, Utah. Mabbutt's job consisted of keeping certain underground conveyor belts working and of keeping the belt rollers and the area surrounding these belts free of coal dust and other materials which fall from the belts or collect around them in the normal course of their operation.

According to both parties, the crux of this case is the question of whether there is substantial evidence to support the decision of the administrative law judge that Fred Mabbutt's heart attack and subsequent death satisfies the requirement of section 35-1-45 that the death be "by accident arising out of or in the course of his employment." However, both sides disagree about the appropriate legal standard to be applied in evaluating the evidence. Therefore, we have two questions on appeal. The first is, What constitutes a compensable "accident"? The second question is whether the evidence of Mr. Mabbutt's activities on the day of his death satisfies the element of causation such that the accident, if one did occur, was in fact related to his employment.

There is no need to dwell at length on the question of the appropriate legal standard. This issue has just been dealt with extensively in *Allen v. Industrial Commission*, 729 P.2d 15 (Utah 1986). There we attempted to settle the meaning of the term "by accident," which had become confused by varying and inconsistent statements from this Court over a long period of time. The *Allen* definition is as follows: "Where either the cause of the injury *or* the result of an exertion was different from what would normally be expected to occur, the occurrence was unplanned, unforeseen, unintended and therefore 'by accident.'" *Id.* at 22 (emphasis in original). This definition follows the standard articulated in *Carling v. Industrial Commission*, 16 Utah 2d 260, 399 P.2d 202 (1965), and in earlier decisions of this Court that can be traced back to 1922, including most notably *Purity Biscuit Co. v. Industrial Commission*, 115 Utah 1, 201 P.2d 961 (1949). This standard has been followed most recently in *Schmidt v. Industrial Commission*, 617 P.2d 693, 695 (Utah 1980), and *Kaiser Steel Corp. v. Monfredi*, 631 P.2d 888, 890–91 (Utah 1981).

Under the *Allen* standard, it is fairly easy to determine that Mr. Mabbutt did die "by accident" on October 23, 1981. His heart attack was certainly an "unexpected or unintended" event that resulted in his death. *Allen v. Industrial Commission*, at 22. However, the finding that the death was "by accident" does not complete the analysis of whether the resulting injury is compensable. Under *Allen*, the more difficult question involves the determination of whether the injury had the requisite connection with the employment duties— whether it arose "out of or in the course of ... employment." U.C.A., 1953, § 35–1–45 (1974 ed., Supp.1986); *see Allen v. Industrial Commission*, at 22.

Prior to *Allen*, the obvious need for a test to assure that there was a causal connection between the injury and the employment duties of the injured party was sometimes dealt with in our cases by requiring that the occurrence resulting in the injury be shown to have involved "unusual exertion." *Allen v. Industrial Commission*, at 23. This is the standard apparently applied by the Commission in this case and found to have been met.

However, *Allen* discarded the usual/unusual exertion distinction as a means for determining whether the injury was the result of an "accident." Instead, the Court dealt with the causation requirement in more candid terms that focus frankly on the questions of legal and medical causation. It delineated the analysis as follows:

> Under the legal test, the law must define what kind of exertion satisfies the test of "arising out of the employment" ... [then] the doctors must say whether the exertion (having been held legally suffi-

cient to support compensation) in fact caused this [injury].

*Id.* at 25, *citing* Larson, *Workmen's Compensation* § 38.83(a), at 7–276 to –277 (1986).

In applying the *Allen* analysis to the present case, then, the first question is whether legal cause has been shown. Under *Allen*, a usual or ordinary exertion, so long as it is an activity connected with the employee's duties, will suffice to show legal cause. However, if the claimant suffers from a pre-existing condition, then he or she must show that the employment activity involved some unusual or extraordinary exertion over and above the "usual wear and tear and exertions of nonemployment life." *Allen v. Industrial Commission*, at 26. In appraising whether the employee's exertion would be usual or ordinary in nonemployment life, an objective standard is to be applied that is based on the nonemployment life of the average person, not the nonemployment life of a particular worker. *Id.* The requirement of "unusual or extraordinary exertion" is designed to screen out those injuries that result from a personal condition which the worker brings to the job, rather than from exertions required of the employee in the workplace. *Id.* at 25.[1]

In the present case, Mabbutt was suffering from a preexisting condition which contributed greatly to his heart attack. The evidence is uncontroverted that he had hypertensive cardiovascular disease, atherosclerotic cardiovascular disease, and possibly diabetic cardiomyopathy. His hypertension was exacerbated by his obesity and possibly a high salt diet. He was a diabetic and had gout. The doctor on the medical panel to which this case was referred by the administrative law judge concluded that there was no evidence that Mabbutt's work "had any relationship to [his] development of coronary artery disease."

■ Since Mabbutt brought heart disease to the workplace, before legal causation can be established, the Commission must find that his employment activities involved exertion or stress in excess of the normally expected level of nonemployment activity for men and women in the latter half of the twentieth century. If such a finding is made, then the requirement of legal cause is satisfied because it is presumed that the employment increased the risk of injury to which that worker was otherwise subject in his nonemployment life. At that point, the inquiry shifts to medical cause, *i.e.*, whether the injured party's work-related activities were, in fact, causally linked to the injury. *Allen v. Industrial Commission*, at 26.

The question of whether the employment activities of a given employee are sufficient to satisfy the legal standard of unusual or extraordinary effort involves two steps. First, the agency must determine as a matter of fact exactly what were the employment-related activities of the injured employee. Second, the agency must decide whether those activities amounted to unusual or extraordinary exertion. This second determination is a mixed question of law and fact.

■ Because the whole legal cause determination hinges upon the agency's findings as to what the injured worker's job-related activities were, our review of the Commission's decision must begin with those findings. In the present case, we are

---

**1.** As a practical matter, when the *Allen* standard is being applied to cases which may involve preexisting conditions, before evidence is taken on the issue of legal cause, the Commission would be well-advised to first make a determination of whether or not the preexisting condition does in fact exist. If a preexisting condition exists, then the parties and the hearing officer will know that the "extraordinary exertion" test will be applied to the facts as they are developed, and the evidence can be appropriately prepared and marshalled for presentation to the fact finder. If a preexisting condition does not exist, the hearing may be expedited because there will be no need to show how hard the employee was or was not working, only that the employment activity led to the injury. Of course, even if a preexisting condition is involved, if the Commission finds that legal cause does exist, then it is still appropriate to refer the matter to a medical panel to determine whether the facts, as determined at the legal cause hearing, are sufficient to establish medical causation.

unable to affirm the Commission's ruling because of the inadequacy of these findings. In his job, Mabbutt worked alone in the mine, and he encountered only one person while working on the day of his death. For that reason, it was necessary to infer what Mabbutt's activities were from the conflicting evidence adduced at the hearing before the administrative law judge. The company brought in an expert to describe his understanding of the exertion required to perform that particular job. His testimony would support a conclusion that no unusual or extraordinary effort was required. On the other hand, Mabbutt's widow introduced testimony from a fellow worker who described how she had seen Mabbutt perform the work, testimony that might support a conclusion that the effort required was unusual. This testimony was disputed by the company.

Unfortunately, the administrative law judge's findings do not resolve the conflicts in the testimony and do not indicate that he made a finding as to exactly what Mabbutt's activities were on the day of his death. Absent such findings, it is impossible for us to take the next step and determine whether Mabbutt's work-related activities, as found by the Commission, rose to the level necessary to satisfy the "unusual or extraordinary" exertion threshold established by Allen for injured employees with preexisting problems.

The administrative law judge found that "Mabbutt died as the result of an accident in the course of his employment ... resulting from unusual exertion and stress connected with his employment." It may be argued that this is a sufficient finding of legal cause to warrant our affirming the Commission on this point. However, the "finding" of unusual exertion and stress is

nothing more than a conclusion. It is not supported by anything that could be construed as a finding as to precisely what Mabbutt was doing on the day of his death. We cannot affirm such a mixed conclusion of fact and law when its necessary premises are not evident.

■ There is an added problem here. The Commission decided this case under pre-*Allen* law. We cannot determine whether the administrative law judge used the words "unusual exertion" in the same sense as they have been defined by *Allen*. A talismanic incantation of "unusual or extraordinary exertion" is not a substitute for careful analysis by the Commission of whether the actual job-related activities in question exceed the normally expected level of activity for men and women in the latter half of the twentieth century.[2] In the present case, we are uncertain of the standard applied by the Commission and cannot tell how the stated conclusion was reached. For that reason, we must reverse and remand the matter to the Commission so that proper findings of fact can be entered and the *Allen* standard can be applied to them to determine legal cause.

A word about the issue of medical cause. As noted, the administrative law judge did not resolve conflicts in the testimony about Mabbutt's work activities. However, he did adopt the findings of the medical panel, which contained a doctor's assumptions about what Mabbutt was actually doing on the day in question, and which then relied on those factual assumptions in finding a causal link between the work and his death. The factual recitation in the panel report was derived from the conflicting evidence presented at the hearing and inferences drawn from that evidence. In a number of

**2.** We reject, categorically, the suggestion advanced by the company that because the belt-attendant job is sometimes performed by women, it *must necessarily* involve less than extraordinary effort or strain. We take judicial notice of the fact that women, as a group, tend to be smaller in size and have less physical strength than do men, as a group. However, with respect to size and strength, individual men and women are arrayed over a continuum from one

extreme to the other. No generalization can be made that because *a* woman performs a certain job it necessarily involves strength and exertion requirements at the lower end of the spectrum, and the contrary is, of course, true of a job performed by *a* man. Each job's demands must be evaluated on their own; they cannot be categorized as requiring "usual" or "unusual" exertion simply because they are normally done by women or men, respectively.

respects, as the company demonstrated at the hearing on its objections to the medical panel report and in its brief on appeal, the panel was confused as to some of the basic duties of Mabbutt's job and made assumptions about his actual activities which are unsupported by the evidence.

 It is not the role of the medical panel to resolve conflicts in the factual evidence regarding the injured party's activities. Section 35–1–85 of the Code places that responsibility solely on the Commission. U.C.A., 1953, § 35–1–85 (1974 ed.). Under *Allen*, as before, the medical panel is only to take the facts as found by the administrative law judge and consider them in light of its medical expertise to assist the administrative law judge in deciding whether medical cause has been proven. The medical panel strays beyond its province when it attempts to resolve factual disputes, and the administrative law judge improperly abdicates his function if he permits the panel to so act. *IGA Food Fair v. Martin*, 584 P.2d 828, 830 (Utah 1978).

We acknowledge that during the adjudication of this matter, the Commission was laboring under the confusing and conflicting state of the law as it had developed prior to *Allen*. The issues presented by this and similar cases should be easier to resolve in the future. However, questions of some subtlety will remain in cases involving claims for internal failure where the worker has a preexisting condition that contributes to the injury and where a determination must be made as to whether a specific work activity amounts to "unusual or extraordinary" exertion. The concept of "unusual or extraordinary" exertion remains to be fleshed out over time. Of necessity, the process of pouring specific content into that concept will rely heavily upon the Commission's expertise in and familiarity with the work environment.

This case is remanded to the Industrial Commission for findings of fact as to what Mabbutt's activities actually were on the day of his death. Based upon those findings and upon a review of *Allen*, the Commission may then adhere to or abandon its conclusion that those activities amounted to extraordinary exertion. Because the determination of medical cause must be based upon the Commission's findings as to the actual activities of the worker, and because the panel's report in the present case rested upon the medical panel's improper assumptions as to the facts, the Commission should resubmit the question of medical causation to the panel after it has made the appropriate factual findings.

HOWE and DURHAM, JJ., concur.

STEWART, Associate Chief Justice (dissenting):

I dissent. In one of the first important tests of the rules laid down in *Allen v. Industrial Commission*, 729 P.2d 15 (Utah 1986), the majority reverses and remands to "resubmit the question of medical causations to the panel." But the medical panel has already addressed that *exact* question, and the administrative law judge found that the decedent's death was caused by his job-related activities on the day that the fatal accident occurred. What more the court expects than has been done by the Commission is not explained by the majority. The administrative law judge was correct in his ruling, the Commission so found, and I agree.

It is precisely this kind of case that demonstrates that our newly formulated methods of analysis will inevitably draw the Commission off into pathways that are bound, I believe, to lead to error. The Court's unfortunate requirement that, since Mabbutt had a preexisting condition, the Commission must find "that his employment activities involved exertion or stress *in excess* of the normally expected level of activity for men and women in the latter of the twentieth century," is precisely the discriminatory application of workers' compensation laws to workers with a preexisting condition, which I referred to in my dissent in *Allen*.

I would affirm on the authority of *Pittsburgh Testing Laboratory v. Keller*, 657 P.2d 1367 (Utah 1983), and *Kaiser Steel Corp. v. Monfredi*, 631 P.2d 888 (Utah

1981). Like *Pittsburgh Testing* and *Monfredi,* the decedent's preexisting coronary condition was clearly aggravated in this case. The administrative law judge made that clear in his findings:

[T]here is no way of knowing exactly how long before the hour of 4:20 p.m. the applicant first felt the effects of that stress or at what time he actually died but it could have been some hours before 4:20 p.m. We are not called upon to speculate as to those times or as to the excessive stress or exertion later in the afternoon in view of the fact that two fine cardiologists have agreed that the evidence is sufficient to convince them that the death was industrially related.

The Administrative Law Judge finds that Mr. Mabbutt died as the result of an accident in the course of his employment on October 23, 1981 resulting from unusual exertion and stress connected with his employment on that fateful afternoon.

I would affirm. The Commission has found the necessary facts, and it is not for us to ignore them.

HALL, C.J., concurs in the dissenting opinion of STEWART, Associate C.J.