The WORKERS' COMPENSATION
FUND and Lanier–Brugh,
Inc., Plaintiffs,

v.

INDUSTRIAL COMMISSION OF UTAH
and Bernice Steward, widow of Dale W.
Steward, Deceased, Defendants.

No. 870418–CA.

Court of Appeals of Utah.

Sept. 12, 1988.

---

James R. Black (argued), Kevin M. McDonough, Black & Moore, Salt Lake City, for plaintiffs.

Thomas R. King (argued), Dwight L. King & Associates, P.C., Salt Lake City, for defendants.

## OPINION

Before BILLINGS, DAVIDSON and JACKSON, JJ.

BILLINGS, Judge:

This is an appeal from an administrative determination that Dale Steward's widow, Bernice Steward, was entitled to death and dependent's benefits because Mr. Steward's death was "by accident arising out of or in the course of his employment." The Workers' Compensation Fund ("Fund") filed a motion for review with the Industrial Commission. The Commission denied the motion and adopted the administrative law judge's findings and conclusions. The Fund then filed this action for review. We affirm the Industrial Commission's order.

We review the facts in the light most favorable to the fact finding tribunal. *Barnes v. Wood*, 750 P.2d 1226, 1227 (Utah Ct.App.1988). At the time of his death, Dale Steward was employed as a truck driver by Lanier Brugh Inc. Steward was scheduled to leave Salt Lake City at 11:00 p.m. on November 10, 1985, to transport mail to Denver, Colorado. Due to bad weather, the truck he was to drive to Denver was late arriving in Salt Lake City. Eager to leave as soon as the truck arrived, Steward called the company's dispatcher throughout the night. Consequently, Steward did not sleep the entire night of November 10–11, 1985.

Steward departed Salt Lake City at 5:30 a.m. on November 11, 1985. Enroute to Denver, Steward encountered a severe snow storm and slippery roads. Despite these adverse conditions, he drove non-stop to Denver arriving at 5:30 p.m. At approximately 11:00 p.m., after a sleepless five-hour layover in Denver, Steward began his return trip to Salt Lake City. Within 30 minutes of his departure, Steward's truck was observed weaving and it ultimately struck and lodged itself on the highway median. The investigating officer's accident report concluded Steward died of a heart attack.

At the time of his death, Steward was 56 years of age, approximately 5'8", and 190 pounds. He had a 36-year smoking habit, suffered from narcolepsy and emphysema. He was taking dextroamphetamine to treat his narcolepsy. He had no reported prior history of cardiac disease.

On February 17, 1986, Steward's widow applied for death and dependent's benefits under the Workers' Compensation Act. An evidentiary hearing was held on November 5, 1986. In his order, the administrative law judge concluded that the "evidence preponderates in favor of the applicant showing the precipitating cause of decedent's fatal cardiac arrhythmia was due to the conditions of his employment and is therefore compensable...." In reaching this conclusion, the administrative law judge found both legal and medical causation, thereby satisfying the requirement that Steward's heart attack "arose out of or in the course of employment."

The administrative law judge had before him the opinions of Dr. Perry and Dr. Heilbrun. Dr. Heilbrun, in a letter to the Commission, concluded that "with the stress surrounding the driving and delivery requirements of Mr. Steward's job, I agree

with Dr. Perry that there is reasonable medical probability that the patient suffered a fatal arrhythmia while driving and, thus, his death should be considered an industrial related cardiac event." The administrative law judge also relied on a scholarly commentary of cardiac arrhythmias, which was not introduced into evidence at the evidentiary hearing. The administrative law judge did not refer the matter to a medical panel to determine whether the facts were sufficient to establish medical causation.

## STANDARD OF REVIEW

At the time of the administrative hearing, the statutory standard of appellate review of the Commission's decisions provided that "[t]he findings and conclusions of the commission on questions of fact shall be conclusive and final and shall not be subject to review," Utah Code Ann. § 35-1-85 (1974) (repealed 1987), unless "the findings do not support the award." Utah Code Ann. § 35-1-84(2) (1974) (repealed 1987). Accordingly, our review of the factual findings of the Industrial Commission is limited to "whether the Commission's findings are arbitrary and capricious, or wholly without cause or contrary to the one [inevitable] conclusion from the evidence or without any substantial evidence to support them." *Lancaster v. Gilbert Dev.*, 736 P.2d 237, 238 (Utah 1987) (quoting *Kaiser Steel Corp. v. Monfredi*, 631 P.2d 888, 890 (Utah 1981)).

## RECOVERY UNDER WORKMEN'S COMPENSATION ACT

There are two prerequisites for a finding of a compensable death under the Workers' Compensation Act. The death must be by accident, and there must be a causal connection between the death and the decedent's employment. *Allen v. Industrial Comm'n*, 729 P.2d 15, 18 (Utah 1986). Although not defined in the Workers' Compensation Act, the term "by accident" has been defined by our Supreme Court: "We ... hold that an accident is an unexpected or unintended occurrence that may be *either* the cause *or* the result of an injury."

*Allen*, 729 P.2d at 22. It is undisputed that Steward's death was "by accident" within the meaning of the Workers' Compensation Act. His heart attack was not planned nor foreseen, and was obviously unexpected and unintended. *Id. See also Price River Coal Co. v. Industrial Comm'n*, 731 P.2d 1079, 1081 (Utah 1986).

The present dispute centers on the second element, namely whether Steward's heart attack had the requisite causal connection with his employment duties: whether it arose "out of or in the course of ... employment." Utah Code Ann. § 35-1-45 (1988). Utah requires the claimant establish both legal and medical causation. *Allen*, 729 P.2d at 25.

### A. Legal Causation

The standard of legal causation varies depending on the deceased's medical condition at the time of the accident.

"[W]hen a claimant has *no* preexisting risk factors, any exertion connected with the employment ... will satisfy the legal causation test." *Lancaster*, 739 P.2d at 239 (emphasis added).

The standard is higher for those claimants with preexisting medical conditions related to the medical cause of death:

> To meet the legal causation requirement, a claimant with a preexisting condition must show that the employment contributed *something substantial to increase the risk* he already faced in everyday life because of his condition. This additional element of risk in the workplace is usually supplied by an exertion greater than that undertaken in normal, everyday life. This extra exertion serves to offset the preexisting condition of the employee as a likely cause of the injury, thereby eliminating claims for impairments resulting from personal risk rather than exertions at work.

*Allen*, 729 P.2d at 25 (citing Larson Workmen's Compensation § 38-83(b) at 7-278 (1986)) (emphasis added). In determining whether the claimant's exertion is usual or ordinary in nonemployment life, an objective test is applied based on the nonemployment life of the average person, not the nonemployment life of the particular

claimant. *Price River Coal,* 731 P.2d at 1082.

Steward had no prior history of heart disease and had been told by a doctor shortly before his death that he had the heart of a "young man." No medical examination performed before his death or autopsy performed after his death indicated that Steward suffered any preexisting heart disease. Indeed, a physical examination performed just one month before his death revealed that Steward's blood pressure was normal and that he had "no carotid bruits, normal fundiscopic, normal pharynx." On these facts, the administrative law judge found there was no evidence of any preexisting heart condition.

We cannot say this factual determination that Steward was not suffering from a preexisting heart disease, was without substantial evidence to support it or was arbitrary and capricious.

Given this determination, Steward's employment activity need only have involved usual or ordinary exertion. *See Price River Coal,* 731 P.2d at 1082 n. 1; *Allen,* 729 P.2d at 26. Steward's heart attack occurred while he was driving a truck for his employer, an exertion connected with his usual employment duty. Thus, the legal causation prong is satisfied.

Furthermore, even if Steward *did* suffer preexisting risk factors sufficient to invoke the higher "unusual or extraordinary exertion" threshold, as the Fund argues, we are convinced Steward satisfied this standard. The administrative law judge found Steward "customarily departed Salt Lake City around 11:00 p.m. and usually arrived in Denver, Colorado, around 9:00 a.m. the following morning. He would then rest in preparation for a return trip leaving Denver around 11:00 p.m., and arriving back in Salt Lake City, the next day." On the date in question, however, Steward did not depart Salt Lake City until 5:30 a.m., when the scheduled truck arrived. He was anxious throughout the night. He was fatigued because he was unable to rest prior to his departure to Denver and prior to his departure from Denver. He also had to drive on slippery roads and during a snow storm. Given these facts, as found by the Commission, Steward's work-related duties were "unusual or extraordinary," sufficient to satisfy the higher standard.

B. Medical Causation

Having determined that Steward's death was legally caused by employment-related activities, our inquiry shifts to the second prong of the test, namely medical causation. "Under the medical cause test, the claimant must show by evidence, opinion, or otherwise that the stress, strain, or exertion required by his or her occupation led to the resulting injury or disability. In the event the claimant cannot show a medical causal connection, compensation [should] be denied." *Allen,* 729 P.2d at 27.

■ The Fund contends that the administrative law judge violated the Fund's due process rights by relying on a scholarly medical commentary which was not introduced at the administrative hearing and was not made part of the record.

The formal rules of evidence do not apply in administrative proceedings held before the Industrial Commission. Utah Code Ann. § 35–1–88 (1988). Nonetheless, "parties are [still] entitled to notice of proceedings and an opportunity to present testimony and cross-examine witnesses" at these proceedings. *Traylor Bros., Inc. v. Overton,* 736 P.2d 1048, 1050 (Utah Ct.App. 1987); *see* Utah Code Ann. § 35–1–82.51 (1974) (repealed 1987). Accordingly,

it is fundamental that in investigations such as the Industrial Commission is authorized to make, any party to a cause or proceeding is entitled to be advised of and afforded an opportunity to meet such evidence as the commission may consider and rely on in the making of its findings and decision. Unless such evidence is brought into the case, and in some lawful manner made a part of the record, it cannot be regarded as competent evidence, and must be excluded in determining the sufficiency of the evidence to support the findings of the Industrial Commission.

*Spencer v. Industrial Comm'n,* 81 Utah 511, 20 P.2d 618, 620 (Utah 1933) (citations

omitted). *See also Tintic Standard Mining Co. v. Industrial Comm'n,* 100 Utah 96, 110 P.2d 367, 369 (1941) ("the commission should not receive evidence on disputed matters where a hearing is held after the hearing is closed, since then a party adversely affected would have no opportunity to meet such evidence. . . .").

In light of the foregoing, we believe the administrative law judge erred in relying on a medical commentary which was not introduced at the administrative hearing and was not made part of the record. However, we find this error harmless as there was other competent evidence to support the finding of medical causation.

The medical opinion evidence presented to the administrative law judge on the issue of medical causation included a letter from Dr. Heilbrun, Steward's physician since August 1975. He concluded Steward's death should be considered an industrial related cardiac event:

> I believe that, with the stress surrounding the driving and delivery requirements of Mr. Steward's job, I agree with Dr. Perry that there is reasonable medical probability that the patient suffered a fatal arrhythmia while driving and, thus, his death should be considered an industrial related cardiac event.

Dr. Perry, a cardiologist asked by the Fund to assess the medical causation issue, also submitted a letter to the Commission. In his letter, Dr. Perry stated:

> In terms of medical probability it is most likely that [Steward] experienced a fatal cardiac arrhythmia while driving, lost consciousness a few seconds later thus losing control of the vehicle and having the accident as reported. It is possible that his dextroamphetamine was related to his death because it may worsen arrhythmias in susceptible individuals.
>
> .    .    .    .    .
>
> In summary in terms of reasonable medical probability, the patient suffered a fatal arrhythmia while driving and the accident was simply the result of his death and subsequent loss of control of the vehicle. While other possibilities exist, they are far less likely. To exhume

and perform a post-mortem examination of the body would alter those probabilities to an extent, but it is highly unlikely it would provide [a] definitive answer.

Although characterized by the Fund as conflicting, these two reports, in our view, are not inconsistent. As we view them, Dr. Heilbrun merely went one step further than Dr. Perry. Dr. Heilbrun analyzed Steward's heart attack in light of Steward's work-related factors. Dr. Perry, on the other hand, merely stated that the cause of Steward's death was a fatal cardiac arrhythmia.

The administrative law judge found that Steward was subject to the following work related stress factors:

> (1) anxiety caused by the late arrival of his truck delaying his departure from Salt Lake City, (2) fatigue from having to drive on slippery roads and during a snow storm, both to and from Denver, (3) fatigue from inadequate rest prior to his departure from Denver, and (4) the use of amphetamines, probably in greater amounts than usual because of the lack of rest.

Under the applicable standard of review, *see Lancaster,* 739 P.2d at 238, we find there is competent evidence before the administrative law judge to support his finding that Steward's employment stress and exertion was both the legal and medical cause of his fatal heart attack.

■ The Fund also claims the administrative law judge abused his discretion by failing to refer the medical causation issue to a medical panel. Utah Code Ann. § 35–1–77(1)(a) (1988).

> [U]pon the filing of a claim for compensation for injury by accident, or for death, arising out of or in the course of employment, and if the employer or its insurance carrier denies liability, the commission *may* refer the medical aspects of the case to a medical panel appointed by the commission.

The controlling statute provides for permissive referral. *Hone v. J.F. Shea Co.,* 728 P.2d 1008, 1012 (Utah 1986). "In some cases, such as where the evidence of causal

connection between the work-related event and the injury is uncertain or highly technical, failure to refer the case to a medical panel may be an abuse of discretion." *Champion Home Builders v. Industrial Comm'n,* 703 P.2d 306, 308 (Utah 1985). Although this court may have referred this case to a medical panel, we cannot say that the administrative law judge abused his discretion in not referring the case to a medical panel when there was medical evidence to support his finding of medical causation.

We find the Industrial Commission's decision that Steward's death is compensable within the meaning of the Workers' Compensation Act is not "arbitrary or capricious" or without *any* evidence to support it. Accordingly, the Industrial Commission's order is affirmed.

DAVIDSON and JACKSON, JJ., concur.