Kathleen NYREHN, Petitioner,

v.

INDUSTRIAL COMMISSION OF UTAH, Employers' Reinsurance Fund, Fred Meyer Stores and/or Liberty Mutual Insurance, Respondents.

No. 900010–CA.

Utah Court of Appeals.

Oct. 25, 1990.

William W. Downes, Jr., David Eckersley (argued), Salt Lake City, for petitioner.

Michael E. Dyer (argued), Brad C. Betebenner, Richards, Brandt, Miller & Nelson, Salt Lake City, for Fred Meyer Stores.

Erie V. Boorman, Administrator (argued), Salt Lake City, for Employers Reinsurance Fund.

Before BENCH, GARFF and CONDER [1], JJ.

## OPINION

BENCH, Judge:

Kathleen Nyrehn petitions this court for review of the Industrial Commission's denial of workers' compensation benefits. We reverse.

Nyrehn worked as a stock room clerk for Fred Meyer Stores. Her duties included pricing and sorting merchandise contained in tubs which were approximately 2½ feet wide, 2½ feet long, and 1½ to 2 feet tall. The tubs weighed between fifteen and forty pounds each, depending on the contents, and were stacked upon each other. Nyrehn would lift and carry the tubs to and from a sorting area approximately thirty to thirty-six times a day. In addition to lifting the tubs, Nyrehn was involved in constant bending and stooping to sort merchandise into different tubs. On January 23, 1985, at approximately 11:00 a.m., Nyrehn felt a gradual onset of pain in her lower back while performing her duties at work. Despite the pain she continued to work. The pain worsened until she finally had to leave work early at approximately 4:00 p.m. After three back operations, Nyrehn's pain persisted and she was still unable to work. She therefore sought permanent disability benefits.

After a hearing, an Administrative Law Judge (A.L.J.) made the following relevant findings of fact: (1) Nyrehn's pain of January 23, 1985 was not the result of a certain incident or activity, but rather the result of "two and [a] half months of lifting tubs of merchandise 30 to 36 times a day;" (2) Nyrehn had an asymptomatic preexisting condition, spondylolysis (disintegration or dissolution of a vertebra); and (3) 75% of Nyrehn's total permanent impairment existing at examination was "caused by the industrial accident of January 23, 1985," and 25% was due to "preexisting incapacity of spondylolysis."

The A.L.J. also made the following relevant conclusions of law: (1) Nyrehn injured her lower back "by accident" in that her injury was neither planned nor foreseen; (2) there was a direct medical causal relationship between the industrial accident and Nyrehn's back problems; (3) due to her preexisting condition, Nyrehn was required to prove legal causation under *Allen v. Industrial Commission*, 729 P.2d 15 (Utah 1986); and (4) Nyrehn's job duties of lifting tubs of merchandise weighing between fifteen and forty pounds did not amount to unusual or extraordinary exertion in excess of the normally expected level of nonemployment activity for men and women in the latter half of the twentieth century as required in *Allen*.[2]

Despite his conclusion that Nyrehn failed to satisfy the *Allen* test, the A.L.J. awarded Nyrehn permanent total disability bene-

---

1. Dean E. Conder, Senior District Court Judge, sitting by special appointment pursuant to Utah Code Ann. § 78–3–24(10) (Supp.1990).

2. In concluding that Nyrehn had not satisfied the *Allen* test, the A.L.J. stated that he followed the "legal doctrine" of *Smith & Edwards v. Industrial Commission*, 770 P.2d 1016 (Utah Ct. App.1989) (lifting 47½ pounds by itself did not constitute an unusual exertion). Nyrehn argues that this statement indicates that the A.L.J. based his conclusion on weight alone, which is inappropriate. *American Roofing Co. v. Indus. Comm'n*, 752 P.2d 912, 915 (Utah Ct.App.1988). Fred Meyer, on the other hand, argues that the A.L.J. considered the total circumstances since at the conclusion of the hearing he referred to various factors besides the weight of the tubs, including the repetitive nature of the lifting. Since we base our decision on other grounds, we need not determine whether the A.L.J. erroneously applied a bright-line test rather than consider the totality of the circumstances as required by *Smith & Edwards*.

fits. He refused to apply *Allen* because he felt that the test was at odds with other Utah Supreme Court cases indicating that handicapped workers should not be placed in a hardship in receiving compensation benefits. He also indicated that he believed the *Allen* test to be unconstitutional because it set a different standard for such handicapped workers.

Fred Meyer Stores and Liberty Mutual Insurance (referred to collectively as Fred Meyer) filed a motion with the Industrial Commission to review the A.L.J.'s award. On review, the Commission adopted the factual findings of the A.L.J. and his conclusion that Nyrehn failed to prove legal causation as required under *Allen*. The Commission then reversed the A.L.J.'s award of benefits, indicating that despite the A.L.J.'s concerns over the constitutionality of the *Allen* test, the Commission was required to apply the test. The Commission concluded that inasmuch as Nyrehn failed to satisfy the *Allen* test she was not entitled to benefits. Nyrehn then petitioned this court to review the Industrial Commission's order.

## WAIVER OF APPEAL

■ Fred Meyer argues that Nyrehn has waived her right to challenge the A.L.J.'s finding that she did not prove legal causation because she did not file her own motion for review of that finding with the Commission.[3] Fred Meyer erroneously relies on *Pease v. Industrial Commission,* 694 P.2d 613 (Utah 1984). In *Pease,* the Utah Supreme Court interpreted the following provision: "(1) Any party in interest who is dissatisfied with the order entered by an administrative law judge or the commission *may* file a motion for review of

such order." Utah Code Ann. § 35–1–82.53(1) (Supp.1983) (emphasis added). The supreme court concluded that when an applicant files for review under this section, he must raise all possible issues or the issues not raised would be considered waived. *Id.* at 616. There is no indication in *Pease* that a prevailing party has an affirmative duty to seek review from faulty findings. Nor do we perceive any such duty in the language of the statute which is clearly permissive.

Although the conclusion of the A.L.J. regarding legal causation may have been faulty, any such error was rendered harmless to Nyrehn by the subsequent award of benefits. If Fred Meyer had not filed for review, she would have had her benefits. Nyrehn simply did not have any reason to appeal until the Commission denied her benefits. *Cf. Halladay v. Cluff,* 739 P.2d 643, 645 (Utah Ct.App.1987) ("Cross-appeals are properly limited to grievances a party has with the judgment as it was entered—not grievances it might acquire depending on the outcome of the appeal."). In petitioning this court to review the denial of benefits, Nyrehn is seeking review of the Commission's conclusion that she did not prove legal causation. She is not seeking review of the A.L.J.'s conclusion. The issue of whether Nyrehn proved legal causation is therefore properly before us.

## STANDARD OF REVIEW

Inasmuch as these proceedings were commenced prior to January 1, 1988, the effective date of the Utah Administrative Procedure Act (UAPA), we look to the prior or case law to determine the proper standard of review.[4]

---

**3.** In essence, Fred Meyer urges us to adopt the following rule: If an A.L.J. makes a *possibly* erroneous finding of fact or conclusion of law that is contrary to the prevailing party, but which did not prevent the party from prevailing, that party must nevertheless seek review in order to preserve any challenge of the possibly erroneous finding/conclusion in the event the losing party moves for review.

**4.** Utah Code Ann. § 63–46b–22(2) (Supp.1990) provides:

(2) Statutes and rules governing agency action, agency review, and judicial review that are in effect on December 31, 1987, govern all agency adjudicative proceedings commenced by or before an agency on or before December 31, 1987, even if those proceedings are still pending before an agency or a court on January 1, 1988.

For a discussion of UAPA's effect on our review of agency findings of fact, see *Grace Drilling Co. v. Bd. of Review of the Industrial Commission,* 776 P.2d 63, 66–68 (Utah Ct.App.1989).

As to findings of fact, our review is deferential. "[T]he reviewing court's inquiry is whether the Commission's findings are 'arbitrary or capricious,' or 'wholly without cause' or contrary to the 'one [inevitable] conclusion from the evidence' or without 'any substantial evidence' to support them. Only then should the Commission's findings be displaced." *Kaiser Steel Corp. v. Monfredi,* 631 P.2d 888, 890 (Utah 1981).

As to the Commission's conclusion that Nyrehn's work-related exertion did not satisfy the *Allen* test, our review is more searching:

The question of whether the employment activities of a given employee are sufficient to satisfy the legal standard of unusual or extraordinary effort involves two steps. First the agency must determine as a matter of fact exactly what were the employment-related activities of the injured employee. Second, the agency must decide whether those activities amounted to unusual or extraordinary exertion. This second determination is a mixed question of law and fact.

*Price River Coal Co. v. Indus. Comm'n,* 731 P.2d 1079, 1082 (Utah 1986).

■ Our standard of review of mixed questions of law and fact is an intermediate review for reasonableness and rationality. "The degree of deference extended to the decisions of the Commission on these intermediate types of issues has been given various expressions, but all are variations of the idea that the Commission's decisions must fall within the limits of reasonableness or rationality." *Sisco Hilte v. Indus.*

*Comm'n,* 766 P.2d 1089, 1091 (Utah Ct. App.1988) (quoting *Utah Dept. of Admin. Servs. v. Public Serv. Comm'n,* 658 P.2d 601, 610 (Utah 1983)).

"[R]easonableness must be determined with reference to the specific terms of the underlying legislation, interpreted in light of its evident purpose as revealed in the legislative history and in light of the public policy sought to be served." This standard appears to give us some flexibility in reviewing the otherwise objective standard that must be applied by the Commission.

*Smith & Edwards Co. v. Indus. Comm'n,* 770 P.2d 1016, 1018 n. 2 (Utah Ct.App.1989) (quoting *Utah Dep't of Admin. Servs.,* 658 P.2d at 611).[5]

"Furthermore, to facilitate the purposes of the legislation, the Workers' Compensation Act is to be liberally construed and any doubt as to compensation is to be resolved in favor of the applicant." *USX Corp. v. Indus. Comm'n,* 781 P.2d 883, 886 (Utah Ct.App.1989); *Kaiser Steel Corp.,* 631 P.2d at 892; *McPhie v. Indus. Comm'n,* 567 P.2d 153, 155 (Utah 1977).

Guided by these standards we must determine whether there was sufficient evidence to warrant application of the higher *Allen* test for legal causation and whether the Commission's conclusion that Nyrehn failed to prove legal causation was a reasonable and rational conclusion.

### RECOVERY OF BENEFITS

In order to recover workers' compensation benefits, an employee must prove that she was injured "by accident arising out of

For a discussion of UAPA's effect on our review of mixed questions of law and fact, see *Pro-Benefit Staffing, Inc. v. Bd. of Review of the Industrial Commission,* 775 P.2d 439, 441–42 (Utah Ct.App.1989).

**5.** Fred Meyer urges us to give considerable deference to the conclusions of the Commission because of its "expertise in and familiarity with the work environment." *Price River Coal,* 731 P.2d at 1084. The deference we accord an agency's disposition under intermediate review fluctuates with the importance of the agency's expertise in determining the issue at hand:

The more likely it is that agency expertise will assist in resolving an issue, the more deference courts should give to the agency's resolu-

tion. The less pertinent agency insight is—or the more likely it is that judicial expertise will be most helpful—the less deference need be paid by reviewing courts to the agency's disposition.

*Taylor v. Utah State Training School,* 775 P.2d 432, 434 (Utah Ct.App.1989).

We recognize that there may be some complex work activities that require deference to the Commission's evaluation of whether the work-related exertion exceeds the exertion of nonemployment life, but in general the Commission is no better suited to compare simple forms of work-related exertion than are we since "normal nonemployment life" is not within the Commission's area of expertise.

or in the course of [her] employment." Utah Code Ann. § 35-1-45 (1988). "This statutory language creates two prerequisites for a finding of compensable injury. First, the injury must be 'by accident.' Second, the language 'arising out of or in the course of employment' requires that there be a causal connection between the injury and the employment." *Allen*, 729 P.2d at 18. The Utah Supreme Court held in *Allen* that a claimant must supply proof of both "legal" and "medical" causation. "Under the legal test, the law must define what kind of exertion satisfies the test of 'arising out of the employment' ... [then] the doctors must say whether the exertion (having been held legally sufficient to support compensation) in fact caused this [injury]." Larson, *Workmen's Compensation* § 38.83(a), at 7–276 to 277 (1986) *quoted in Allen*, 729 P.2d at 25.

> To meet the legal causation requirement, a claimant with a preexisting condition must show that the employment contributed something substantial to increase the risk [she] already faced in everyday life because of [her] condition. This additional element of risk in the work-place is usually supplied by an exertion greater than that undertaken in normal, everyday life. This extra exertion serves to offset the preexisting condition of the employee as a likely cause of the injury, thereby eliminating claims for impairments resulting from a personal risk rather than exertions at work.

*Allen*, 729 P.2d at 25.[6]

Therefore, the only two issues[7] before us are (1) whether Nyrehn was "suffering

---

**6.** This standard is often referred to as the higher standard of *Allen* since, "[w]here there is no preexisting condition, a usual or ordinary exertion is sufficient [to prove legal causation]." *Allen*, 729 P.2d at 26. *Compare Hone v. J.F. Shea Co.*, 728 P.2d 1008 (Utah 1986) (exertion of putting on heavy pair of coveralls was sufficient when claimant did not have any preexisting back problems).

**7.** Fred ꞏMeyer does not challenge the A.L.J.'s finding that Nyrehn was injured "by accident." Nor does it challenge the conclusion of the A.L.J. that the industrial accident was the medical cause of Nyrehn's disability.

**8.** The A.L.J. did find—for purposes of allocating liability between the employer and the Employ-

from a preexisting condition which contribute[d] to the injury," *Allen*, 729 P.2d at 26, and (2) did the work-related exertion which caused Nyrehn's injury exceed the "usual wear and tear and exertions of nonemployment life." *Id.* "If such a finding is made, then the requirement of legal cause is satisfied because it is presumed that the employment increased the risk of injury to which that worker was otherwise subject in [her] nonemployment life." *Price River Coal Co.*, 731 P.2d at 1082.

### Preexisting Condition

■ An A.L.J. may not simply presume that the finding of a preexisting condition warrants application of the *Allen* test. An employer must prove medically that the claimant "suffers from a preexisting condition which contributes to the injury." *Allen*, 729 P.2d at 26. *See, e.g., Price River Coal Co.*, 731 P.2d at 1082 (evidence proved that preexisting conditions "contributed greatly" to heart attack); *Worker's Compensation Fund v. Indus. Comm'n*, 761 P.2d 572 (Utah Ct.App.1988) (claimant suffered from narcolepsy and emphysema and had a 36–year smoking habit, but no prior history of heart disease, *Allen* test therefore did not apply when claimant died of heart attack).

■ The factual findings of the Commission are silent as to whether Nyrehn's preexisting back condition contributed to the industrial injury.[8] The A.L.J. had merely concluded as a matter of law that

ers' Reinsurance Fund—that 75% of the total permanent impairment *existing at the time of the examination* was "caused by the industrial accident of January 23, 1985," and 25% was due to "pre-existing incapacity." Such an allocation, however, is not proof that the preexisting condition somehow contributed to the injury of January 23, 1985, it only addresses the end result, i.e., the total disability at the time of the examination. *See, e.g., Richfield Care Center v. Torgerson*, 733 P.2d 178, 180 (Utah 1987) (5% impairment existed prior to accident, 7½% impairment existed following accident, therefore only 2½% attributed to the accident); *cf. Zimmerman v. Indus. Comm'n*, 785 P.2d 1127, 1130 (Utah Ct.App.1989) (permanent impairment resulted solely from the preexisting conditions and not from the industrial accident or any

"[s]ince Ms. Nyrehn brought a pre-existing low back condition to the workplace," the *Allen* test applied. Implicit in such a legal conclusion is the critical factual finding that Nyrehn's preexisting condition contributed to her injury. Such material findings, however, may not be implied. In order for us to meaningfully review the findings of the Commission, the findings must be "sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." *Acton v. Deliran,* 737 P.2d 996, 999 (Utah 1987) (quoting *Rucker v. Dalton,* 598 P.2d 1336 (Utah 1979)). The failure of a trial court to make adequate findings is reversible error. *Id.* Likewise, the failure of an agency to make adequate findings of fact on material issues renders its findings "arbitrary and capricious" unless the evidence is "clear, uncontroverted and capable of only one conclusion." *Id.* (quoting *Kinkella v. Baugh,* 660 P.2d 233, 236 (Utah 1983)).

Since we conclude that Nyrehn's work-related exertion satisfied even the higher standard for proving legal causation, the Commission's failure to make adequate findings of fact was harmless. We therefore need not address whether there was sufficient evidence to sustain the Commission's implied finding.

### Legal Causation

■ The legal causation test adopted in *Allen* is not meant to prevent workers with preexisting conditions from recovering benefits.[9] "Just because a person suffers a preexisting condition, he or she is not disqualified from obtaining compensation. Our cases make clear that 'the aggravation or lighting up of a pre-existing disease by an industrial accident is compensable ....'" *Allen,* 729 P.2d at 25 (quoting *Powers v. Indus. Comm'n,* 19 Utah 2d 140, 143–44, 427 P.2d 740, 743 (1967) (footnote omitted)).

The higher standard of legal causation adopted in *Allen* is intended to "offset the preexisting condition of the employee as a likely cause of the injury, thereby eliminating claims for impairments resulting from a *personal risk* rather than *exertions at work."* *Allen,* 729 P.2d at 25 (emphasis added). *See also Price River Coal Co.,* 731 P.2d at 1082 (legal causation test "is designed to screen out those injuries that result from a personal condition ... rather than from exertions required of the employee in the workplace"); *Hone v. J.F. Shea Co.,* 728 P.2d 1008, 1011 (Utah 1986) (legal causation test is to distinguish between an injury which is *"more likely than not* produced by a risk related to the employment from one that is caused by a personal risk" (emphasis added)); *Lancaster v. Gilbert Dev.,* 736 P.2d 237 (Utah 1987) (the fact that heart attack occurred at work was a mere coincidence).

"[T]he key question in determining causation is whether, given this body and this exertion, the exertion in fact contributed to the injury." *Allen,* 729 P.2d at 24. In order to answer this inquiry, we must first determine what "exertion" is at issue: the simple lifting of one tub of merchandise, or the repetitive lifting of many such tubs over an extended period of time.

The Commission found that Nyrehn's pain resulted from "two and a half months of lifting tubs of merchandise 30 to 36 times a day." The industrial accident, therefore, was not a single incident of lifting one tub of merchandise; it was the climax of repetitive lifting. The Utah Supreme Court has broadly defined "accident" to include injuries which are the result of repetitive exertion.

> [An accident] connotes an unanticipated, unintended occurrence different from what would normally be expected to occur in the usual course of events.... [T]his is not necessarily restricted to some single incident which happened suddenly at one particular time and does not

combination of the accident with the preexisting conditions).

**9.** "It is the duty of the courts and the commission to construe the Workers' Compensation Act liberally and in favor of employee coverage when statutory terms reasonably admit such a construction." *Heaton v. Second Injury Fund,* 796 P.2d 676 (1990).

preclude the possibility that *due to exertion, stress or other repetitive cause, a climax might be reached in such a manner as to properly fall within the definition of an accident as just stated above.*

*Carling v. Indus. Comm'n,* 16 Utah 2d 260, 261–62, 399 P.2d 202, 203 (1965) *quoted with approval in Allen,* 729 P.2d at 18.

■ When an accident is the climax of repeated exertions, as in Nyrehn's case, work-related "exertion," for purposes of proving legal causation, is the aggregate exertion of the repetitive exertions that establish the accident. *See Miera v. Indus. Comm'n,* 728 P.2d 1023, 1024 (Utah 1986) (claimant's repetitive "jumps into an eight-foot hole [by way of] a four-foot platform at thirty-minute intervals constitute a considerably greater exertion than that encountered in non-employment life"). In other words, we must consider the whole burden on the camel and not just the straw that breaks the camel's back. *See Smith & Edwards,* 770 P.2d at 1018 (must consider all factors related to exertion); *Workers' Compensation Fund,* 761 P.2d at 575 (comparing cumulative effect of several factors, including driver's fatigue, anxiety, and the stress of driving through a snow storm, with the exertion of nonemployment life).

In *Allen,* the supreme court listed the following examples of typical nonemployment activities: "taking full garbage cans to the street, lifting and carrying baggage for travel, changing a flat tire on an automobile, lifting a small child to chest height, and climbing the stairs in buildings." *Allen,* 729 P.2d at 26. While lifting a tub of merchandise weighing between 15 and 40 pounds once or twice could likewise fit into the list of examples above, lifting such a tub 30 to 36 times a day for two and a half months is not a typical nonemployment activity. The foregoing moderately strenuous activities which may not be considered unusual when performed once or twice may nevertheless amount to unusual exertion when performed repeatedly. Otherwise, garbage collectors, baggage handlers, auto mechanics, childcare providers, etc., would be barred by the foregoing examples.

■ In the case before us it is unquestionable that two and a half months of lifting tubs of merchandise 30 to 36 times a day would cause unusual and extraordinary wear and tear on a body when compared with the "usual wear and tear and exertions of nonemployment life." *Allen,* 729 P.2d at 26. The test is not whether the type of exertion which caused the injury is unknown in nonemployment life, but rather whether the cumulative work-related exertion exceeds the normal level of exertion in nonemployment life. We doubt that there are many physical activities outside of the workplace where this type of effort is being repeated so often over such a significant period of time.

The Commission's finding that Nyrehn's work-related exertion was not an unusual exertion was comparable to a conclusion that the typical nonemployment activities of people in today's society includes lifting a full garbage can 30 to 36 times per day each working day for two and a half months. Merely stating the comparison shows the fallacy of the Commission's finding. Nyrehn's back injury was not a coincidental injury which appeared at work without any enhancement from the workplace. "[Her] employment contributed something substantial to increase the risk [she] already faced in everyday life because of [her] condition." *Allen,* 729 P.2d at 25. The Commission's conclusion that Nyrehn failed to prove legal causation was therefore not reasonable and rational.

## CONCLUSION

Nyrehn's repetitive lifting of the tubs over an extended period of time was an unusual exertion as compared with the "usual wear and tear and exertions of nonemployment life." *Allen,* 729 P.2d at 26. We therefore conclude that Nyrehn proved legal causation. The Commission's order

denying Nyrehn her workers' compensation benefits is reversed and the case is remanded with instructions to grant Nyrehn benefits for total permanent disability as calculated by the A.L.J. Costs on review to petitioner.

GARFF and CONDER, JJ., concur.