STOUFFER FOODS CORPORATION and Liberty Mutual Insurance Company, Petitioners,

v.

INDUSTRIAL COMMISSION OF UTAH, and Curtis C. Green, Respondents.

No. 900164–CA.

Court of Appeals of Utah.

Nov. 9, 1990.

---

Michael E. Dyer (argued), Brad C. Betebenner, Richards, Brandt, Miller & Nelson, Salt Lake City, for petitioners.

T. Jeffery Cottle (argued), Orem, for respondent Curtis C. Green.

Heber M. Wells Building, Salt Lake City, for respondent Industrial Com'n of Utah.

Before GREENWOOD, JACKSON and ORME, JJ.

## OPINION

GREENWOOD, Judge:

Curtis Green filed a claim for worker's compensation benefits with the Industrial Commission of Utah. The administrative law judge (A.L.J.) awarded Green temporary total disability and medical benefits. Petitioner Stouffer Foods Corporation and its insurer, Liberty Mutual Life Insurance (referred to collectively as "Stouffer"), filed a Motion for Review of that order, which was denied by the Commission. Stouffer then filed this action for review. We affirm.

## FACTS

On August 31, 1987, Green was hired as a technician for Stouffer Foods. His employment responsibilities included breaking down food processing equipment and cleaning the equipment by using large high-pressure water hoses. The hoses were operated in a manner similar to a gas pump; they worked with hand grips that required continuous pressure to allow the pump to operate. The hoses were fitted with plastic rings which would hold the hose handles in an "on" position; however the rings were broken on the hoses that Green used. Consequently, he had to apply the pressure himself by squeezing the grips, throughout his eight-hour work shifts.

On September 4, 1987, Green experienced pain in his hands and arms while operating two hoses, one in each hand. The pain became so severe that Green reported to a company nurse. On September 18, 1987, Green's hands and wrists became numb while he was pulling a conveyer belt with one hand and operating a hose with the other. Green went to his supervisor who sent him to a second company nurse. The nurse examined Green's hands and told him to report to a company doctor and not to return to work until he was given a medical release.

Green reported to the Mountain View Hospital emergency room and was told to return the next week for a thorough examination. He was given a light duty work release which provided that he could not lift more than ten pounds. Upon returning to work, Green was assigned to the same type of tasks that he had been performing before. When he was seen by a company doctor the next week, Green was told he might have carpal tunnel syndrome (CTS).[1] An electromyogram was scheduled and Green was given anti-inflammatory medication and braces for both wrists. On October 5, 1987, the company doctor instructed Stouffer to assign Green to a paperwork task as the diagnosis of CTS had been confirmed. Shortly thereafter, Green was terminated by Stouffer.

Green saw an orthopedic surgeon, Dr. James Steele, on October 16, 1987, about the persistent pain in his hands. Dr. Steele agreed with the company doctor's diagnosis of CTS. Initially, he prescribed a moderate treatment of steroids, but eventually Dr. Steele determined that surgery would be required on both wrists. Surgery was performed on November 4, 1987, on Green's right wrist. Surgery on Green's left wrist was planned for a later date, to avoid total incapacitation at any time.

Green filed a claim for workers' compensation benefits with the Industrial Commission and an application for a hearing on November 18, 1987. A hearing was held before an A.L.J. on July 18, 1989, after Green had been evaluated by an independent medical panel. The medical panel found that there was a medically demonstrable causal connection between Green's wrist problems and his work activities. The A.L.J. adopted this finding and found that Green's work activities were not what an average person would normally encounter and constituted repetitive trauma and,

thus, a compensable industrial accident. Based on these findings, the A.L.J. awarded temporary total disability compensation and medical expenses to Green. The Industrial Commission upheld the A.L.J.'s award. On petition for review, Stouffer contends Green did not sustain a compensable industrial injury.

## STANDARD OF REVIEW

Because this proceeding was commenced before an agency on or before December 31, 1987, the Utah Administrative Procedures Act (UAPA), Utah Code Ann. §§ 63–46b–1 to –22 (Supp.1989) does not apply. *See Pro–Benefit Staffing, Inc. v. Board of Review of the Industrial Comm'n,* 775 P.2d 439, 441 (Utah Ct.App.1989); Utah Code Ann. § 63–46b–22(2) (1987).

■ Under pre-UAPA law, when reviewing commission findings of fact, the court determines only whether the findings are arbitrary and capricious. *Olsen v. Industrial Comm'n,* 797 P.2d 1098, 1100, 142 Utah Adv.Rep 5, 6 (1990) (citing *Kaiser Steel Corp. v. Monfredi,* 631 P.2d 888, 890 (Utah 1981)). However, when mixed questions of fact and law are at issue, a reasonable and rational standard of review is applied. *Sisco Hilte v. Industrial Comm'n,* 766 P.2d 1089, 1091 (Utah Ct. App.1988).

■ The primary issue before us in this case is a mixed question of law and fact: whether the employment activities of Green were sufficient to satisfy the legal standard of unusual or extraordinary effort so as to constitute a compensable industrial accident. *Price River Coal v. Industrial Comm'n,* 731 P.2d 1079, 1083 (Utah 1986). Therefore, the proper standard of review is whether the A.L.J.'s finding was reasonable and rational.[2]

1. Carpal tunnel syndrome is a "complex of symptoms resulting from compression of the median nerve in the carpal tunnel with pain and burning or tingling parathesias in the fingers and hand, sometimes extending to the elbow." *Belwood Nursing Home v. Industrial Comm'n,* 115 Ill.2d 524, 106 Ill.Dec. 235, 236, 505 N.E.2d 1026, 1027 (1987) (quoting Dorland's Illustrated Medical Dictionary 1289 (26th ed. 1981)).

2. Green argues that this appeal involves a mere question of fact. We disagree. "[T]he agency must decide whether [employment related] activities amounted to unusual or extraordinary exertion. This ... determination is a mixed question of law and fact." *Price River Coal,* 731 P.2d at 1089.

## RECOVERY UNDER WORKERS' COMPENSATION ACT

There are two prerequisites to a finding of a compensable injury under the Workers' Compensation Act: the injury must have occurred by accident; and there must be a causal connection between the injury and the claimant's employment activities. *Sisco Hilte v. Industrial Comm'n,* 766 P.2d 1089, 1090 (Utah Ct.App.1988) (citing *Allen v. Industrial Comm'n,* 729 P.2d 15, 18 (Utah 1986)); *see also* Utah Code Ann. § 35–1–45 (1988). The parties do not dispute that the onset of Green's CTS was an accident within the meaning of the Workers' Compensation Act. Rather, they disagree as to whether his injury arose "out of and in the course of employment," as required by section 35–1–45. Specifically Stouffer argues that Green failed to prove that an unusual event or exertion precipitated the onset of CTS.

In *Allen,* the Utah Supreme Court held that the unexpected result of a work-related activity may be a compensable accident if both medical and legal causation can be shown.[3] The standard of legal causation varies depending on the condition of the claimant at the time of the injury. A claimant with a preexisting condition must show that the employment contributed something substantial to increase the risk he already faced in everyday life because of his condition. *American Roofing Co. v. Industrial Comm'n,* 752 P.2d 912, 915 (Utah Ct.App.1988); *Sisco Hilte,* 766 P.2d at 1090. This higher standard attempts to distinguish between injuries which

(a) coincidentally occur at work because a preexisting condition results in symptoms which appear during working hours without any enhancement from the workplace, and (b) those injuries which occur because some condition or exertion of employment increases the risk of injury which the worker normally faces in everyday life.

*Allen,* 729 P.2d at 25.

The A.L.J.'s findings of fact state that Green had never previously experienced CTS symptoms, although he had engaged in sports such as weight lifting and football. The findings further adopt the medical panel's report that recent medical literature indicates a relationship between CTS and work utilizing the upper extremities; and that had it not been for Green's employment activities the CTS symptoms may have remained quiescent, though there "may have been some inherent susceptibilities which occurred congenitally." *Allen* requires that "the employer must prove medically that the claimant suffers from a preexisting condition which contributes to the injury." *Id.* at 26. The A.L.J.'s findings in this case fall short of a clear finding of a preexisting condition contributing to an industrial accident. The A.L.J. proceeded to apply the higher legal causation test under *Allen,* which presupposes a preexisting condition. Because we conclude that the A.L.J. correctly found legal causation even under the higher standard, we will not further inquire as to whether a preexisting condition contributed to the industrial injury. *See Nyrehn v. Industrial Comm'n,* 800 P.2d 330 (Utah Ct.App.1990).

"[T]he key question in determining causation is whether given this body and this exertion, the exertion in fact contributed to the injury." *Allen,* 729 P.2d at 24. In order to answer this inquiry, the A.L.J. must first determine what exertions by Green are involved. *Price River Coal,* 731 P.2d at 1082. *See also Nyrehn,* 800 P.2d at 334. Working eight- to ten-hour shifts six days a week, operating high pressure water hoses that required continual pressure, and using both hands continuously, were the "exertions" that the A.L.J. found.

According to the A.L.J., the industrial accident was, therefore, not the result of a single episode of gripping a high-pressure hose, but the repetitive and/or continuous gripping of high-pressure hoses for up to

---

**3.** Stouffer does not question the finding of medical causation, but argues that Green failed to establish legal causation.

eight hours in any one work period.[4]

Having determined what the relevant employment-related activities of the injured employee were, we must now address the question of whether those activities amounted to unusual or extraordinary exertion. *Smith & Edwards v. Industrial Comm'n,* 770 P.2d 1016, 1017 (Utah Ct. App.1989). The A.L.J. in the present case found:

> the course of the simple gripping of a pump would not in and of itself, would [sic] constitute a compensable accident or any kind of unusual exposure. However, because so much of the applicant's work day was spent gripping and holding the pumps under pressure, the Administrative Law Judge is of the opinion that this is not normal exposure and not something which the average person would be subjected to in any regular work activities or daily living activities.

■ In *Allen,* the court determined that the comparison between usual and unusual exertion should be defined according to an objective standard: "Note that the comparison is not with this *employee's* usual exertion in *his employment* but with the exertions of normal unemployment life of this or any other person." *Allen,* 729 P.2d at 26 (quoting Larson, *Workman's Compensation* § 38.83(b) at 7–279 (1980) (emphasis in original)). The court went on to list "typical nonemployment activities" that are generally expected of men and women in the latter part of the 20th century: "taking full garbage cans to the street, lifting and carrying baggage for travel, changing a flat tire on an automobile, lifting a small child to chest height, and climbing stairs in buildings." *Id.* While occasionally using a gasoline-type hose may be fairly regarded as typical of everyday life, applying repeated or constant pressure to the grips of high-pressure hoses, such as those Green

utilized in his employment, for hours at a time is not a "typical non-employment activity." *See Miera v. Industrial Comm'n,* 728 P.2d 1023, 1024–25 (Utah 1986) ("jumps into an eight-foot hole from a four-foot platform at thirty-minute intervals constitute[d] a considerably greater exertion than that encountered in non-employment life ...").

We decline to engage in a "bright-line" analysis as urged by Stouffer, examining only the number of days that Green had been at work before his injury occurred. The usualness or unusualness of a claimant's exertion must be determined in its actual context. *See Sisco Hilte,* 766 P.2d at 1091. Instead of looking at only isolated aspects of a claimant's employment activities, such as duration, we apply a "totality of circumstances" test. *See, e.g., Smith & Edwards,* 770 P.2d at 1018 ("We think it important that the examples consist of a set of circumstances, including as only one factor, the weight of the object."); *American Roofing Co.,* 752 P.2d at 915 ("The Commission found that the weight alone did not make [claimant's] exertion unusual or extraordinary. Rather, evidence of the weight, together with the manner in which [the claimant] lifted the bucket ... combined to characterize [the] action as unusual or extraordinary under the *Allen* definition.").

■ Stouffer would read into *Allen* a minimal durational requirement, requiring claimants such as Green who have injuries which may have resulted from cumulative executions, to prove that they performed the exertion enough times to qualify as an unusual or extraordinary exertion. In *Nyrehn,* this court rejected a similar argument that it is the type of exertion which is critical, finding that lifting tubs weighing between fifteen and forty pounds, thirty to thirty-six times a day is not a "typical

---

4. This fits within the broad definition of "compensable accidents" in *Allen.* "[An accident] is not necessarily restricted to some single incident which happened suddenly at one particular time and does not preclude the possibility that due to exertion, stress, or other repetitive cause, a climax might be reached in such a manner as

to properly fall within the definition of an accident...." *Allen,* 729 P.2d at 18 (quoting *Carling v. Industrial Comm'n,* 16 Utah 2d 260, 399 P.2d 202, 203 (1965)). Thus, the Utah Supreme Court allowed for a compensable injury to include an injury which was the result of a repetitive exertion.

nonemployment activity." When applying the *Allen* criteria to an injury such as Green's, the existence of unusual exertions or additional risks in the workplace are the pivotal factors, and not the length of employment. In this case as in *Nyrhen*, it is "the aggregate exertion of the repetitive exertions that establish the accident." *Nyrhen*, 800 P.2d at 334. As concluded in *Nyrhen*, "The test is not whether the type of exertion which caused the injury is unknown in employment life, but whether the cumulative work-related exertion exceeds the normal level in nonemployment life." *Id.* at 334.

### CONCLUSION

We find that Green's employment activities met the legal standard of unusual or extraordinary exertion to constitute a compensable industrial accident. Therefore, we affirm the Industrial Commission's order.

JACKSON and ORME, JJ., concur.