Charles D. KENT, Petitioner,

v.

DEPARTMENT OF EMPLOYMENT
SECURITY, and the Career Service
Review Board, Respondents.

No. 920676–CA.

Court of Appeals of Utah.

Sept. 30, 1993.

Phillip W. Dyer, Salt Lake City, for petitioner.

K. Allan Zabel, Salt Lake City, for respondent Dept. of Employment Sec.

Before GREENWOOD, JACKSON and RUSSON, JJ.

## OPINION

JACKSON, Judge:

Petitioner, Charles Kent, seeks review of a final order upholding his dismissal from state employment after formal adjudicative proceedings before the Career Service Review Board (the CSRB). We affirm.

## FACTS

Kent was originally hired as an Accountant, grade 17 with the Utah Department of Employment Security (the Department). After a little more than a year, Kent attained "career service" status. In October 1986, Kent became an Accountant, grade 21 and in January 1991, attained the position of Field Auditor II, grade 21.

In May 1991, Kent's supervisor, Don Avery, learned that Kent had been indicted by a federal grand jury for fraudulently endorsing ten U.S. Treasury checks belonging to a third party which he obtained outside the course of his state employment. Avery told Kent that if he were found guilty, it would have an impact on Kent's employment. Kent was placed under closer supervision and his duties were restricted to reduce his handling of trust fund monies. Avery asked Kent to keep him informed about the progress of the indictment situation.

Kent failed to advise Avery of the progress of the criminal proceedings and pleaded guilty to one count of fraudulently signing a U.S. Treasury check, a misdemeanor, on August 8, 1991. Approximately two months later, upon learning of the disposition of the forgery charge, Kent's supervisor gave Kent a written Notification of Intent to Discipline by Dismissal from the Department. The specific reasons for the intended dismissal were because (1) Kent pleaded guilty to forging U.S. Treasury checks, (2) Kent failed to keep his supervisor apprised of the progress of his case, and (3) it was not in the best interest of the Department to have a person working in a responsible position with a questionable reputation for honesty and trustworthiness.

On October 23, 1991, Kent initiated the appeal process outlined in the Grievance and Appeal Procedures Act (the Grievance Act)[1] by grieving the recommendation for dismissal to his supervisor. Kent's supervisor considered the grievance, but did not change his recommendation. Kent appealed his supervisor's recommendation and in November 1991, the Department Administrator conducted a "step 4" pre-termination hearing. In December 1991, the administrator issued a Disciplinary Decision dismissing Kent from the Department. The administrator cited Kent's conviction of "a crime of moral turpitude" and his failure to keep his supervisor informed of the progress of his case as reasons for the dismissal. The Department Administrator concluded that these actions disabled Kent from continued effectiveness as an employee of the Department. In February 1992, Sherri Guyon, a CSRB Hearing Officer, conducted a formal "step 5" hearing. Guyon denied the grievance, concluding there was adequate cause for the discipline, due process was followed, and the decision to terminate Kent was not an abuse of agency discretion. Kent appealed the step 5 decision to the CSRB. After a "step 6" formal adjudication, the final step in the administrative review process under the Grievance Act, the four-member CSRB unanimously affirmed the step 5 decision. The CSRB concluded that evidence existed in the record substantiating the department's claims against Kent and that the departmental decision to dismiss Kent was a reasonable exercise of discretion.

Kent appeals from the step 6 hearing arguing the CSRB abused its discretion by affirming the Department decision because (1) the department failed to prove Kent knew of the professional standards he allegedly violated, (2) the department failed to prove a nexus between Kent's off-duty misconduct and specific departmental policies, and (3) Kent's misconduct occurred while he was in a different position than that held at the time of the discipline.

## ANALYSIS

### Standard of Review

We are called upon to review the CSRB decision affirming the Department's step 5 decision dismissing Kent from employment. The CSRB is an administrative agency whose sole purpose is reviewing other agency decisions concerning career service employees. Utah Code Ann. § 67–19a–202 (Supp.1993). In light of this purpose, the Utah legislature has empowered the CSRB to promulgate rules governing the "procedures in jurisdictional and evidentiary hearings." Utah Code Ann. § 67–19a–203(6) (Supp.1993). With this authority, the CSRB promulgated rule R137–1–21, which regulates the CSRB appellate procedure. Utah Code Admin.P. R137–1–21D(2) states:

> The board's standards of review consist of determining: (a) whether the hearing officer's evidentiary decision was supported by substantial evidence; (b) whether that decision is warranted by the facts and circumstances of the case on appeal; and (c) whether the hearing officer's findings of fact and conclusions of law are correct and accurate based upon the evidence in the record.

Rule R137–1–21 governs the CSRB's review of the Department's decision. Our review of the CSRB decision falls under the

1. Utah Code Ann. §§ 67–19a–101 to –408 (Supp. 1991).

Utah Administrative Procedures Act (UAPA).[2]

Whether the CSRB's decision to affirm the Department's dismissal of Kent was appropriate is a question of applying rule R137-1-21D to the facts in the record before it.[3] *See Utah Dept. of Corrections v. Despain,* 824 P.2d 439, 443 (Utah App. 1991). In such circumstances, Utah Code Ann. § 63–46b–16(4) (1989 & Supp.1992) provides:

> The appellate court shall grant relief only if, on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced by any of the following:

> .    .    .    .    .

> (h) the agency action is:

> .    .    .    .    .

> (ii) contrary to a rule of the agency. . . .

▮ In construing this section, the Utah Supreme Court has held that appellate courts should employ an intermediate standard, one of some, but not total, deference, in reviewing an agency's application of its own rules. *SEMECO Indus., Inc. v. State Tax Comm'n,* 849 P.2d 1167, 1174 (Utah 1993) (Durham, J., dissenting); *Union Pac.*

*R.R. v. State Tax Comm'n,* 842 P.2d 876, 879 (Utah 1992); *Holland v. Career Serv. Review Bd.,* 856 P.2d 678, 681 (Utah App. 1993). Thus, we review CSRB's application of its rules for reasonableness and rationality. *Id.*

### Substantial Evidence and the Department's Decision

Rule R137–1–21D(2)(a) requires the CSRB to determine whether the Hearing Officer's evidentiary decision was supported by substantial evidence. Kent argues the Department failed to prove the existence of "professional standards adopted by the Department," and, consequently, that Kent could not have violated nonexisting standards.[4] It is clear from the notice, however, that the specific reasons for Kent's dismissal were that he pleaded guilty to forgery and·that he failed to keep his supervisor informed of the matter. The Department conducted a hearing and heard evidence concerning these specific reasons for Kent's dismissal. Based on the evidence, the Hearing Officer specifically found that Kent had pleaded guilty to one count of fraudulently signing a U.S. Treasury check and that he had not kept his supervisor· informed of the situation. After a review of the record, the CSRB

---

2. *See* Utah Code Ann. §§ 63–46b–1 to –22 (1989 and Supp.1992)

3. The promulgation of a rule is an agency action which we would review under either UAPA, section 63–46b–16(4)(d) ("agency has erroneously interpreted or applied the law"), or UAPA section 63–46b–16(4)(h)(i) ("agency action is an abuse of the discretion delegated to the agency by statute"). If a statute granted implicit or explicit discretion to the agency to promulgate the rule, we would review the promulgation under section 63–46b–16(4)(h)(i) for an abuse of discretion. If the agency promulgated the rule without an implicit or explicit grant of discretion to do so, we would review the action under section 63–46b–16(4)(d) for correction of error. Because the propriety of the rule itself is not at issue in this case, we need only review the agency's application of the rule to the facts.

4. Although not articulated by the petitioner, he may be arguing that even if the Department met its burden of proof concerning the existence of professional standards, petitioner had no prior knowledge of them. Thus, any disciplinary action based on the standards would be a viola-

tion of his due process rights. Rule 468–11–1.(1) states:

> The type and severity of any disciplinary action taken shall be governed by principles of due process which include:

> .    .    .    .    .

> (1)(b) Prior knowledge of rules and standards

We reject this alternative argument. "The purpose of due process is to prevent fundamental unfairness...." *State v. Maestas,* 815 P.2d 1319, 1325 (Utah App.1991). The petitioner was dismissed because he pleaded guilty to forgery while holding a position of great fiduciary responsibility. Our judicial system does not exempt society at large from the punishment of crimes because it had no prior knowledge that the crimes committed were punishable. The specific "rule or standard" that Kent should have had knowledge of is that the commission of a crime can be a cause for discipline. It is not unfair or violative of Kent's due process rights to hold him responsible for having prior knowledge that the commission of a forgery is a crime of moral turpitude and against the public policy of the state of Utah.

concluded the evidence in the record met the substantial evidence requirement. Our review of the record indicates that the CSRB's conclusion was reasonable and rational.

Rule R137–1–21D(2)(c) requires the CSRB to determine whether the Hearing Officer's findings of fact and conclusions of law are correct and accurate based upon the evidence in the record. Based on her findings, the Hearing Officer concluded adequate cause or reason existed for Kent's dismissal. After reviewing the record, we agree with the CSRB's determination that there was no reversible error in the Hearing Officer's findings of fact and conclusions of law. Accordingly, Kent's hope for relief rests in the propriety of the CSRB's review of whether the Department's dismissal of Kent was warranted given the facts of the case on appeal. *See* Utah Code Admin.P. R137–1–21D(2)(b) (1992).

### Department's Decision was Warranted

█ Before addressing Kent's arguments concerning whether the Department's dismissal was warranted given the facts of the case, we must determine the appropriate deference required of the CSRB. Utah Code Ann. § 67–19–18(5)(e) (1991) clearly grants the Department discretion when dismissing or demoting an employee. Section 67–19–18(5)(e) states: "Following the hearing, the employee may be dismissed or demoted if the department head finds *adequate cause or reason.*" (Emphasis added). Accordingly, the CSRB must affirm the Department's decision if it is within the bounds of reasonableness and rationality.

Discretion must be exercised within appropriate legal boundaries. *Tolman v. Salt Lake County Attorney,* 818 P.2d 23, 26 (Utah App.1991). In the case before us, the legal boundaries that limit the Department's use of discretion are set forth in Utah Code Ann. § 67–19–18 (Supp.1992) and in Utah Code Admin.P. R468–11 (1992). Section 67–19–18(5), which is almost identical to Rule R468–11–2.(2), states:

(a) No career service employee may be demoted or dismissed unless the depart-ment head or designated representative has complied with this subsection.

(b) The department head or designated representative notifies the employee in writing of the reasons for the dismissal or demotion.

(c) The employee has no less than five working days to reply and have the reply considered by the department head.

(d) The employee has an opportunity to be heard by the department head or designated representative.

(e) Following the hearing, the employee may be dismissed or demoted if the department head finds adequate cause or reason.

The Department's Notification of Intent to Discipline cited two general reasons for its intent to discipline Kent: (1) "to advance the good of the public interest;" and (2) "noncompliance with professional standards adopted by this department." The Notification went on to give specific causes or reasons for the intended disciplinary action. The Department specifically set forth Kent's guilty plea to forgery and his failure to keep his supervisor apprised of the situation after being asked to do so, as the causes or reasons why he was being considered for dismissal. After a hearing, the Hearing Officer found adequate cause to dismiss based on the Department's Supervisor Handbook, which lists the conviction of a crime of moral turpitude as a cause for dismissal.

The Department fully complied with the administrative rules governing the dismissal of a career service employee. As we have already noted, the Department's action took into account the principles of due process, in accordance with administrative rule. Accordingly, the department's decision to dismiss Kent was within the bounds of reasonableness and rationality.

### Nexus Between Off–Duty Conduct and Employment

█ Kent argues that no nexus existed between his off-duty conduct and any specific departmental policy. This court has noted that "[c]ourts often find a nexus

between off-duty conduct and job performance, particularly where the position required high morals, control, and discipline and the off-duty conduct is in violation of specific employment policies." *Utah Dept. of Corrections v. Despain,* 824 P.2d 439, 446 (Utah App.1991) (footnote omitted).[5] Kent's position was clearly one requiring high morals, control, and discipline. He held a position of fiduciary responsibility, including the handling of trust fund monies. The Department found that two very important qualities required of Kent's position were honesty and trust. The Department's Supervisor Handbook states that one could be dismissed for committing crimes of moral turpitude. This clearly evidences a departmental policy against forgery by its employees. Kent's immediate supervisor and the Department Administrator both provided evidence showing how the Department's operations would be adversely affected by Kent's continued employment. The Department concluded that a nexus was shown by "Kent's failure to communicate during the indictment process, in addition to the guilty plea, ... contribut[ing] to the [Department's] loss of confidence in [Kent] and to the loss of [Kent's] credibility to function as an effective employee in this sensitive position requiring unquestioned trustworthiness and honesty." Accordingly, the Department properly found a nexus between Kent's off-duty conduct and his employment.

We have reviewed Kent's "misconduct while holding another office" argument and find it to be without merit.

## CONCLUSION

The Department's dismissal of Kent was within the bounds set by Utah Code Ann. § 67–19–18 and Utah Rule Admin.P. R468–11. There was a nexus between Kent's off-duty conduct and the violation of a departmental policy. The CSRB's review of the Department's action was not contrary to rule promulgated by the CSRB for review-

ing the Department's decision. Accordingly, we cannot say that the CSRB's affirmance was beyond the bounds of reasonableness and rationality.

We affirm.

RUSSON, J., concurs.

GREENWOOD, J., concurs in result.

---

**5.** Neither the statutes creating the Department of Employment Security and the Career Service Review Board nor the rules promulgated by these agencies require a showing of any "nexus"

before disciplining an employee by dismissal. This court, however, addressed the issue in *Despain,* albeit without expressing a need or reason for doing so.