2008 UT App 293

**UTAH AUTO AUCTION and/or American Home Assurance, Petitioner,**

v.

**LABOR COMMISSION and Douglas R. Davis, Respondents.**

No. 20070792–CA.

Court of Appeals of Utah.

July 31, 2008.

---

David H. Tolk and Michael K. Woolley, Salt Lake City, for Petitioner.

Gary E. Atkin and Kenneth E. Atkin, Salt Lake City, for Respondents.

Before GREENWOOD, P.J., McHUGH and ORME, JJ.

## OPINION

GREENWOOD, Presiding Judge:

¶ 1 Utah Auto Auction and/or American Home Assurance (Utah Auto) appeals the Utah Labor Commission's (the Commission) decision that Douglas R. Davis is entitled to workers' compensation benefits for an injury sustained in March 2004. We affirm.

## BACKGROUND

¶ 2 On March 15, 2004, while working for Utah Auto, Davis drove a car up to an auc-tion line, exited the car, moved the front seat forward, and reached into the backseat to retrieve a small handheld computer weighing approximately three-and-one-half pounds. Upon standing upright, Davis felt immediate pain in his low back and dropped to his knees. He was subsequently diagnosed with a disc herniation in the L2–3 level of his spine. Davis filed for workers' compensation benefits, and an administrative hearing was held regarding his claim.

¶ 3 At the May 25, 2005 hearing, Utah Auto argued that Davis's injury was the result of a preexisting condition, thus the more stringent rule of *Allen v. Industrial Commission*, 729 P.2d 15 (Utah 1986) (the *Allen* test) applied. As dictated by that rule, Utah Auto argues that Davis's injury is not compensable because it was not the result of an unusual or extraordinary exertion. Utah Auto's argument was based on a letter from Davis's doctor, Douglas T. Shepherd, M.D., in which Dr. Shepherd stated that Davis had previously injured other areas of his back,[1] and that

> [w]hile mild degenerative changes may have been a pre-cursor or possibly predisposed [Davis] to some further symptoms, I cannot state with medical certainty that they were the predominant or proximate cause of his disc extrusion at L2–3. I can say that the L2–3 extrusion appears to be a new finding compared with the March 2003 study.

Utah Auto further argued that the *Allen* test applies because "the standard is not that the preexisting conditions are the primary or proximate or predominant cause, but rather that they contribute [to the injury]," and Dr. Shepherd's letter indicates as much. Davis objected, arguing that under *Nyrehn v. Industrial Commission*, 800 P.2d 330 (Utah Ct.App.1990), Utah Auto is required to prove

---

1. In 1998, Davis was diagnosed with persistent mechanical low back pain and an MRI was performed. The MRI showed disc protrusions at the L4–5 and L3–4 levels of Davis's back. Davis was subsequently diagnosed as having moderate degenerative changes with disc protrusion and received workers' compensation from his prior employer. In March 2003, Davis had another MRI, which noted "minimal central bulge" in the L2–3 section of his spine, "without evidence of protrusion." And in December 2003, Davis slipped on some ice, injured his low back, and felt pain radiating through his left leg.

that the previous back injuries "did contribute" to the new injury, not that they "may" have contributed.

¶4 At the close of the May 25 hearing, Judge George, the administrative law judge (ALJ), made two statements from the bench relevant to this appeal. First, he determined that Davis's current injury did not result from an unusual or extraordinary exertion; thus, if the *Allen* test applied there would be no recovery. Second, he concluded that the case should be referred to a medical panel because he was "not comfortable that this is definitely a preexisting condition."

¶5 In December 2005, Judge George issued Interim Findings of Fact and Conclusions of Law, in which he stated that "[t]he matter will be referred to a medical panel for expert assistance in resolving the issues of: medical causation, and if that is shown, stabilization date; permanent partial impairment; necessary and reasonably related medical expenses[;] and recommended medical care." In February 2006, Judge George wrote a letter to the medical panel, asking them to consider eight specific questions, the first of which asked, "Is there a medically demonstrable causal connection between the applicant's current low back problems and the incident of 3/15/2004?"[2] Utah Auto sent Judge George a letter objecting to the medical panel referral, arguing that the case need not be referred to a panel, but if it did, the sole issue to address was "whether the applicant's preexisting conditions contributed to the injury." Davis also responded with a letter, arguing that there was no evidence for the medical panel to consider regarding a preexisting condition.

¶6 The medical panel report was issued in March 2006 and stated, among other things, that "[t]here is clear evidence of the change in the MRI findings of 2003 and 2004." For various reasons, both parties filed objections

to the report. Judge Marlowe, who took the case over after Judge George's retirement, overruled these objections and determined that the "case is now ready for a final order." Judge Marlowe then issued Findings of Fact and Conclusions of Law, in which she determined that Davis is entitled to compensation for his work-related injury. More specifically, Judge Marlowe stated that Utah Auto's objection to the medical panel referral was overruled because Utah Auto "did not show that [Davis] had a preexisting condition." Judge Marlowe also stated that "there is no affirmative medical opinion that [Davis's] L4–5 back condition caused or contributed to his present L2–3 condition," and because it is undisputed that the injury occurred while Davis was acting in the course and scope of his employment, Davis "meets legal causation requirements."

¶7 Utah Auto filed a Motion for Review with the Commission. After reviewing the case, the Commission affirmed the ALJ's decision. Utah Auto then filed a Motion for Reconsideration, which was denied. This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

¶8 Utah Auto raises two issues on appeal. First, it argues that the Commission erroneously applied *Allen* by (1) declining to deny and dismiss Davis's claim for failure to prove legal causation under the *Allen* test; (2) instructing the medical panel to address issues that were not in dispute; and (3) requiring Utah Auto to prove that the preexisting conditions were the predominant or proximate cause of Davis's back injury.[3] "Whether the Commission erroneously applied the *Allen* test is a mixed question of law and fact reviewed for reasonableness and rationality." *Acosta v. Labor Comm'n*, 2002 UT App 67, ¶11, 44 P.3d 819.

---

2. The remainder of the questions involved specifics about Davis's injury and recovery and are not at issue in this appeal.

3. Both parties concede that a medical panel referral was not necessary and that the Commission did not rely on the medical panel's report in

reaching its decision. Because we agree that neither the Commission nor Judge Marlowe relied on the medical panel's report, we conclude that this issue is irrelevant and we decline to address it further.

¶ 9 Second, Utah Auto asserts that it was denied due process because this case was "ultimately determined by an administrative law judge who did not hear the case at the administrative hearing." "Due process challenges are questions of law that we review applying a correction of error standard." *Color Country Mgmt. v. Labor Comm'n*, 2001 UT App 370, ¶ 17, 38 P.3d 969 (internal quotation marks omitted).[4]

## ANALYSIS

### I. The Commission Did not Err in Applying *Allen*

#### A. The *Allen* Test

¶ 10 Utah Auto first argues that the Commission erred in refusing to apply the *Allen* test to the facts of this case. Under Utah law, an employee "who is injured . . . by accident . . . in the course of the employee's employment, wherever such injury occurred, if the accident was not purposely self-inflicted, shall be paid [benefits]." Utah Code Ann. § 34A–2–401(1) (2005). Consequently, to recover workers' compensation benefits, an employee must establish that the accident arose in the course of employment. *See Allen v. Industrial Comm'n*, 729 P.2d 15, 25 (Utah 1986). If, however, the employer establishes that a preexisting condition contributed to the injury, the employee must further demonstrate that he or she was undertaking some kind of unusual or extraordinary exertion when the injury occurred:

> To meet the legal causation requirement, a claimant with a preexisting condition must show that the employment contributed something substantial to increase the risk he already faced in everyday life because of his condition. This additional element of risk in the workplace is usually supplied

by an exertion greater than that undertaken in normal, everyday life. This extra exertion serves to offset the preexisting condition of the employee as a likely cause of the injury, thereby eliminating claims for impairments resulting from a personal risk rather than exertions at work.

*Id.* In this case, the parties dispute whether the evidence presented at the May 25 hearing established that Davis suffered from a preexisting condition which contributed to his injury. More specifically, Davis asserts, and the Commission agreed, that the evidence failed to establish a contributing preexisting condition because Dr. Shepherd's statements—the sole evidence admitted on this issue—"only indicated a possibility that [Davis's] degenerative changes predisposed him to further symptoms." In contrast, Utah Auto asserts that Dr. Shepherd's statements were sufficient because they established that Davis had "extensive preexisting conditions which contributed to the subject injury and that his symptoms appeared without any enhancement from the workplace."

¶ 11 We first note that the burden of proving causation by a preexisting condition rests with the employer. In *Acosta v. Labor Commission*, 2002 UT App 67, 44 P.3d 819, we noted that "[o]nce the employer/insurer has shown that there was a preexisting condition that contributed to the injury, that is, that the employee has brought some element of risk of injury to the job him or herself, the *Allen* test applies." *Id.* ¶ 27. Further, in *Nyrehn*, we explained that an ALJ "may not simply presume that the finding of a preexisting condition warrants application of the *Allen* test. *An employer must prove medically* that the claimant 'suffers from a preexisting condition which contributes to the injury.' "[5] *Nyrehn v. Industrial Comm'n*, 800 P.2d 330, 334 (Utah Ct.App.1990) (emphasis added) (quoting *Allen*, 729 P.2d at 26).

---

4. Davis also argues that Utah Auto was required, yet failed, to marshal the evidence. While it is true that Utah Auto failed to marshal the evidence, the facts are, for the most part, undisputed. Further, Utah Auto is not challenging the evidence underlying the court's decision, but the legal conclusions drawn therefrom. Thus, Utah Auto need not marshal. *See Ostermiller v. Ostermiller*, 2008 UT App 249, ¶ 2 n. 1(mem).

5. Ultimately, the *Nyrehn* court did not rule on whether the employer met its burden of proving a preexisting condition because the court determined that even if *Allen* applied, the employee met that higher standard. *See Nyrehn v. Indus-*

¶ 12 While this case calls into question the quantum of evidence required for the employer to meet its burden of proving that the employee has a preexisting condition which contributed to the injury, we note that we are without a brightline rule regarding this evidentiary threshold. We have, however, previously held that a decision that a preexisting condition contributed to an injury is a material finding which "may not be implied," and further, that the finding on this issue must be "sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion ... was reached." *Id.* at 335 (internal quotation marks omitted).

¶ 13 Moreover, several Utah cases illustrate situations where the employer's evidence was or was not sufficient to meet its burden. For example, in *Price River Coal Co. v. Industrial Commission,* 731 P.2d 1079 (Utah 1986), the Utah Supreme Court determined that the employee's preexisting condition "contributed greatly" to his heart attack because the "uncontroverted [evidence established] that he had hypertensive cardiovascular disease, atherosclerotic cardiovascular disease, and possibly diabetic cardiomyopathy. His hypertension was exacerbated by his obesity and possibly a high salt diet. He was a diabetic and had gout." *Id.* at 1082. In contrast, in *Workers' Compensation Fund v. Industrial Commission,* 761 P.2d 572 (Utah Ct.App.1988), this court upheld the ALJ's finding that a preexisting condition did not contribute to the injury because there was no evidence that the employee, who died from a heart attack while driving a truck for his employer, had any prior heart problems. *See id.* at 574–75. And in *Acosta,* this court determined that there was sufficient evidence to establish that a preexisting condition related to the injury at issue because two doctors' reports clearly stated so. One examining doctor stated, "*'I do not think there is any question* that the severe stenosis seen on [the] MRI is the cause of [Acos-

ta's] symptoms and that it first became symptomatic as a result of the work injury even though she clearly had some pre-existing disease.'" *Acosta,* 2002 UT App 67, ¶ 30, 44 P.3d 819 (first alteration in original) (emphasis added). A second doctor stated that Acosta's "*degenerative changes ... are clearly pre-existing ...* having been gradually increasing over multiple years. I suspect ... that there has been some type of slight disk herniation that then ... set the patient into her current symptoms. I do not think it would have to be much ... due to the significant stenosis.'" *Id.* (emphasis added) (fourth omission in original). These specific statements were "adequate to convince [this court] that the Commission's finding that the preexisting condition contributed to the injury [wa]s supported by substantial evidence." *Id.*

¶ 14 In the present case, however, there was no similar evidence. As the Commission stated, "Dr. Shepherd only indicated a possibility that [Davis's] degenerative changes predisposed him to further symptoms." Other than Dr. Shepherd's equivocal and inconclusive statements, there was no evidence offered indicating that the L2–3 area of Davis's back had previously been injured or that such condition contributed to the current injury. To reiterate, the only evidence Utah Auto relies on in its appeal is Dr. Shepherd's statement that "[w]hile mild degenerative changes may have been a precursor or possibly predisposed [Davis] to some further symptoms, I cannot state with medical certainty that they were the predominant or proximate cause of his disc extrusion at L2–3." Based on the lack of evidence suggesting that the preexisting condition contributed to the current injury and reliance on Dr. Shepherd's letter, which was indecisive, we affirm the Commission's decision that this case does not require application of the more stringent *Allen* test on the basis that the Commission's decision was reasonable and rational.

trial Comm'n, 800 P.2d 330, 335 (Utah Ct.App. 1990) ("Since we conclude that Nyrehn's work-related exertion satisfied even the higher standard for proving legal causation, ... [w]e ... need not address whether there was sufficient evidence to sustain the Commission's implied finding.").

## B. Predominant or Proximate Cause

¶ 15 Utah Auto also argues that Judge Marlowe misapplied *Allen* by requiring Utah Auto to establish that Davis's alleged preexisting condition was the predominant or proximate cause of his current injury. Utah Auto points to language in Judge Marlowe's ruling in which she stated that " 'Dr. Shepherd ... could not state with medical certainty that [Davis's] conditions were the predominant or proximate cause of the disk extrusion at L2–3.' " However, Utah Auto misinterprets Judge Marlowe's ruling. In the findings of fact, Judge Marlowe quoted a letter from Dr. Shepherd wherein he included the above language. In the Conclusions of Law, however, Judge Marlowe relied on the correct standard used in determining whether the *Allen* test applies, stating that "there was no medical evidence indicating that a preexisting condition caused or contributed to [Davis's] industrial injury." Thus, we disagree with Utah Auto's argument that Judge Marlowe applied an inappropriate legal standard.

## II. Due Process

¶ 16 Lastly, Utah Auto argues that it was denied due process because the ALJ who issued the final order was not the ALJ who presided over the initial hearing. In advancing its argument, Utah Auto asserts that Judge Marlowe was "not aware of the issues and the verbal rulings of Judge George because [she was] not present at the [May 2005] administrative hearing." Utah Auto further contends that the reassignment of the case prevented petitioners from having the medical panel review the "disputed medical issue in the case."

¶ 17 Other than unsupported speculation, Utah Auto provides no evidence indicating that Judge Marlowe failed to review the record before making a ruling. Further, Utah Auto provides no authority indicating that an administrative case cannot be assigned to a new judge upon the first judge's retirement or unavailability. Moreover, we conclude that this issue is without merit because the Commission is the final body to review the ALJ's decision and does so without the benefit of having been present at the original hearing; Utah Auto is appealing from the Commission's decision, not the ALJ's decision; the Commission had the benefit of the full record at the time it reviewed this case; and without any indication to conclude otherwise, we presume that the Commission did in fact review the record. *See generally* Utah Code Ann. § 34A–1–303(4)(c) (2005) (stating that the Commission may base its decision on the "evidence previously submitted" or "may request additional briefing").

## CONCLUSION

¶ 18 In summary, we hold that the Commission did not err in concluding that the *Allen* test does not apply to the facts of this case because there was not enough evidence presented to establish that Davis suffered from a preexisting condition which contributed to his current injury. Further, we reject Utah Auto's argument that Judge Marlowe applied an incorrect standard of law because its argument is based on a misreading of Judge Marlowe's order. And finally, we determine that Utah Auto was not denied due process by virtue of the fact that two different ALJs presided over this case at different times. We therefore affirm the Commission's decision as being within the limits of reasonableness and rationality.

¶ 19 WE CONCUR: CAROLYN B. McHUGH and GREGORY K. ORME, Judges.