2010 UT App 229

**RESORT RETAINERS and Zenith Insurance Co., Petitioners,**

v.

**LABOR COMMISSION and Donna E. Jones, Respondents.**

No. 20090668–CA.

Court of Appeals of Utah.

Aug. 19, 2010.

Michael E. Dyer and Dori K. Petersen, Salt Lake City, for Petitioners.

Gary E. Atkin, K. Dawn Atkin, Sydney Jayne Magid, and Alan L. Hennebold, Salt Lake City, for Respondents.

Before Judges ORME, THORNE, and ROTH.

## OPINION

THORNE, Judge:

¶ 1 Petitioners Resort Retainers and Zenith Insurance Co. (collectively, Resort) seek judicial review of the Utah Labor Commission Appeals Board's (the Commission) order denying Resort's request for reconsideration and affirming the Commission's prior decision regarding benefits for Respondent Donna E. Jones. We affirm.

## BACKGROUND

¶ 2 In 2001, while employed by Resort Retainers, Jones sustained an accidental industrial injury. In 2002, Jones filed an application for hearing with the Utah Labor Commission seeking temporary total disability as a result of her injury. After completion of discovery, it became apparent that medical care was also at issue. Jones filed an amended application for a hearing to address the additional issue of whether her injury required surgery. At a hearing on February 19, 2003, various doctors recommended a psychological evaluation before deciding upon surgery. The Administrative Law Judge (ALJ) continued the hearing until after the psychological evaluations were obtained.

¶ 3 On April 28, 2003, Jones saw Dr. George Mooney, who concluded, "The totality of the information suggests caution with surgical decision making. To the extent that this is elective back surgery with minimal objective pathology, the MMPI–II tends to predict an unsatisfactory outcome from surgery." On July 21, 2003, based upon Dr. Mooney's report and his own evaluations of Jones, Dr. John Braun, an orthopedic surgeon, concluded that "[w]eighing all the factors available to me presently, I do not find Donna Jones to be a good surgical candidate at this time." On August 5, 2003, Resort sent a copy of Dr. Braun's report to the Commission. Resort stated that based upon Dr. Braun's report, there did not appear to be a medical dispute.

¶ 4 On November 19, 2003, Dr. Robert Hood performed a surgical evaluation on Jones. On January 7, 2004, Jones obtained medical records from Dr. Hood, wherein he recommended surgery. On January 9, Jones

provided a copy of Dr. Hood's report (first report) to Resort.

¶5 An evidentiary hearing was held on January 13, 2004, wherein the parties presented medical evidence. Resort sought to exclude Dr. Hood's first report based on three grounds: (1) Jones's failure to comply with discovery by not responding to Resort's request for evidence regarding whether a medical dispute existed pertaining to surgery; (2) Jones's late filing of Dr. Hood's first report in violation of the Commission rules requiring reports be submitted twenty days prior to the hearing; and (3) that Dr. Hood's report may be substantially flawed because there was no evidence that Dr. Hood was shown any of the medical records that had been prepared in the case, which included a videotape of Jones performing activities, seemingly with minimal pain. Resort requested an opportunity to speak with Dr. Hood to determine what evidence he had been shown and ensure that Dr. Hood reviewed all of the available medical evidence.

¶6 The ALJ denied Resort's motion to exclude the report and ruled that Resort's motion asserting discovery concerns was not presented in a timely manner. The ALJ further concluded that it was Resort's responsibility to collect the medical record exhibits and that Resort had been on notice that Jones was seeking treatment with Dr. Hood. The ALJ also denied Resort's request for an opportunity to show all of Jones's medical records to Dr. Hood and ordered that all of the evidence be submitted to a medical panel. The ALJ explained that the purpose of a medical panel was to resolve medical questions, including those such as the disagreement about the accuracy of Dr. Hood's report.

¶7 After the hearing, Resort submitted Jones's medical records including the videotape to Dr. Hood for his review. Based on his review of the evidence, Dr. Hood, in his January 30, 2004 report, (second report) reversed his opinion and canceled Jones's scheduled surgery.

¶8 Thereafter, the medical panel issued its report stating that "the surgery recommended by Dr. Hood is reasonable and necessary treatment necessitated by [Jones's] 28 December 2002 industrial accident." Resort filed an objection to the medical panel's report arguing that the case was not appropriate for medical panel evaluation because, based on Dr. Hood's second report, there was no conflicting medical issue for the panel to decide. The ALJ then found that Dr. Hood's second report obviated the need for the medical panel's evaluation and declined to accept the medical panel's report. The ALJ concluded that based on the current medical evidence, Jones should not have surgery.

¶9 Jones filed a motion for review with the Commission, arguing that the medical panel report should be admitted into evidence because at the time of Dr. Hood's second report the hearing record was closed. The Commission granted Jones's motion for review. The Commission later set aside the ALJ's decision and instructed the ALJ to determine whether to reopen the evidentiary record for admission of Dr. Hood's second report, allow rebuttal evidence if the report was to be admitted, and determine the medical facts of the case in light of all the evidence, including the medical panel's report.

¶10 The ALJ reopened the evidentiary record and admitted Dr. Hood's second report. The ALJ then returned the matter to the medical panel with Dr. Hood's second report. The medical panel issued its supplemental report and opined that surgery is reasonably medically necessary as a result of the industrial accident. The ALJ adopted the medical panel's supplemental report and found that surgery would be appropriate. Thereafter, in August 2006, Resort filed a motion for review of the ALJ's order. In April 2009, the Commission issued an order affirming the ALJ's order. Resort filed a motion for reconsideration, which the Commission denied. Resort then filed this petition for judicial review.

ISSUES AND STANDARDS OF REVIEW

¶11 Resort argues that the ALJ, and subsequently the Commission, erred by admitting Dr. Hood's late-filed first report. Utah Administrative Code rule 602–2–1(H)(5) provides that "[l]ate-filed medical records may

or may not be admitted at the discretion of the administrative law judge by stipulation or for good cause shown." Utah Admin. Code R602–2–1(H)(5). "[T]he Utah Supreme Court has held that appellate courts should employ an intermediate standard, one of some, but not total, deference, in reviewing an agency's application of its own rules." *Kent v. Department of Emp't Sec.*, 860 P.2d 984, 986 (Utah Ct.App.1993). Thus, we review the Commission's application of its own rules for reasonableness and rationality. *See id.*

¶ 12 Resort asserts that the Commission violated its due process rights by denying Resort an opportunity to respond to the late-filed medical records. "Due process challenges are questions of law that we review applying a correction of error standard." *Utah Auto Auction v. Labor Comm'n*, 2008 UT App 293, ¶ 9, 191 P.3d 1252 (internal quotation marks omitted).

█ ¶ 13 Resort also argues that the Commission erred by submitting the matter to a medical panel because there was no conflicting medical issue for the panel to decide. "Whether there are conflicting medical reports is a question of fact. We must uphold the Commission's factual findings if such findings are supported by substantial evidence based upon the record as a whole." *Brown & Root Indus. Serv. v. Industrial Comm'n*, 947 P.2d 671, 677 (Utah 1997). In addition, the Commission, in its discretion,[1] may refer the medical aspects of a workers' compensation case to a medical panel. *See* Utah Code Ann. § 34A–2–601(1)(a) (Supp. 2009). "[R]eferral to a medical panel is mandatory only where there is a medical controversy as evidenced through conflicting medical reports." *Brown & Root*, 947 P.2d at 677.

¶ 14 Resort next argues that the Commission erred in adopting the medical panel report as part of its factual findings because

the report was not supported by any medical opinion other than the panel's. "[We] will not overturn the Commission's factual findings unless they are arbitrary and capricious, or wholly without cause, or contrary to the one [inevitable] conclusion from the evidence." *McKesson Corp. v. Labor Comm'n*, 2002 UT App 10, ¶ 25, 41 P.3d 468 (second alteration in original) (internal quotation marks omitted).

¶ 15 Resort further argues that the Commission erred in refusing to remand this matter to the ALJ pursuant to Utah Administrative Code rule 602–2–1(O)[2] to evaluate Jones's current medical status and determine if any physician was currently willing to perform the surgery. We review the Commission's application of its rules for reasonableness and rationality. *See Kent*, 860 P.2d at 986.

## ANALYSIS

### I. Admission of Late–Filed Medical Records

█ ¶ 16 Resort argues that the Commission erred by affirming the ALJ's decision to admit Dr. Hood's first report because it was filed late in violation of Utah Administrative Code rules 602–2–1(B)(3) and 602–2–1(H)(2). *See* Utah Admin. Code R602–2–1(B)(3), R602–2–1(H)(2). Appellate courts employ an intermediate standard, one of some but not complete deference, in reviewing an agency's application of its own rules. *See Kent v. Department of Emp't Sec.*, 860 P.2d 984, 986 (Utah Ct.App.1993). Thus, we review the Commission's application of its rules for reasonableness and rationality. *See id.*

█ ¶ 17 Resort first asserts that the ALJ's decision to admit Dr. Hood's first report, filed one business day prior to the scheduled hearing, violated rule 602–2–

---

1. Although the Commission has discretion in determining whether to refer a case to a medical panel, it has adopted Utah Administrative Code rule 602–2–2, which limits that discretion by requiring a medical panel in certain cases. *See* Utah Admin. Code R602–2–2(A) (providing that "[a] panel *will be* utilized by the Administrative Law Judge where one or more significant medical issues may be involved" (emphasis added)).

2. Utah Administrative Code rule 602–2–1(O) allows parties to request reconsideration of an order on motion for review and prescribes that requests for reconsideration shall be governed by Utah Code section 63G–4–302. *See* Utah Admin. Code R602–2–1(O); *see also* Utah Code Ann. § 63G–4–302 (2008) (outlining agency review procedures).

1(B)(3). This rule requires a claimant to include "supporting medical documentation of the claim where there is a dispute over medical issues" in the claimant's application for hearing. *See* Utah Admin. Code R602–2–1(B)(3). Resort does not, as Utah Rule of Appellate Procedure 24 requires, provide a citation to the record showing that this issue was preserved. *See generally* Utah R.App. P. 24(a)(5)(A). Our review of the record reveals that Resort did not raise this particular issue in proceedings before the administrative agency. "[I]ssues not raised in proceedings before administrative agencies are not subject to judicial review except in exceptional circumstances." *Brown & Root,* 947 P.2d at 677. Because Resort did not raise this issue such that the Commission was on notice of the issue and could consider the argument, nor did Resort argue plain error or exceptional circumstances in this court, we conclude that Resort failed to preserve this issue. Thus, we decline to address it further.

■ ¶ 18 Resort next argues that the ALJ's decision, affirmed by the Commission, to admit the late-filed report violated Utah Administrative Code rule 602–2–1(H)(2), which provides that "[p]etitioner shall submit all relevant medical records contained in his/her possession to the respondent for the preparation of a joint medical records exhibit at least twenty (20) working days prior to the scheduled hearing." Utah Admin. Code R602–2–1(H)(2). Subsection (H)(5) of that rule provides that "[l]ate-filed medical records may or may not be admitted at the discretion of the administrative law judge by stipulation or for good cause shown." *Id.* R602–2–1(H)(5).

¶ 19 The record reflects that the ALJ allowed admission of Dr. Hood's first report for several reasons. First, the ALJ concluded that Resort, the party required to prepare a joint medical record, *see id.* R602–2–1(H)(3), was on notice that Jones was seeing Dr. Hood and knew that Dr. Hood's first report should be included in the medical record exhibit. The ALJ next concluded that Resort also made an untimely filing in that Resort failed to submit the medical record exhibit "to the Division and the petitioner or petitioner's counsel at least ten (10) working

days prior to the hearing." *Id.* R602–2–1(H)(5). This might have alerted the parties to the absence of Dr. Hood's report. Consequently, the ALJ admitted both the late-filed report and late-filed medical record exhibit. Although the ALJ did not specifically state that good cause existed, the ALJ's explanation itself provides a basis in the record that good cause existed. We hold that it was not unreasonable or irrational for the Commission to conclude that the ALJ acted within the scope of rule 602–2–1.

■ ¶ 20 Resort also argues that the Commission violated Resort's due process rights by denying Resort an opportunity to respond to the late-filed medical records. Again, Resort does not direct us to the record where this argument was specifically raised. Our review of the record reveals that Resort did not raise this due process issue in proceedings before the administrative agency so as to alert the ALJ or Commission of the need to consider the issue. Resort, after objecting to the admission of Dr. Hood's report, requested an opportunity to show Dr. Hood all of Jones's medical records to see if those records would impact his decision. The ALJ denied Resort's request. The Commission corrected any mistakes that the ALJ may have made in denying Resort's request by later instructing the ALJ to determine whether to reopen the evidentiary record for admission of Dr. Hood's second report, allow rebuttal evidence if the report was to be admitted, and determine the medical facts of the case in light of all the evidence. On remand, the ALJ reopened the record, admitted Dr. Hood's second report, allowed rebuttal evidence, and resubmitted the matter with Dr. Hood's second report to the medical panel. Resort did not, however, object and assert the Commission's and the ALJ's attempts to correct the problem were inadequate and violated Resort's due process rights. As such, neither the ALJ nor the Commission were given an opportunity to remedy any asserted defect. Because Resort did not raise this particular issue in proceedings below nor did Resort argue plain error or exceptional circumstances in this

court, we decline to address this argument.[3] *See generally State v. Person,* 2006 UT App 288, ¶ 10, 140 P.3d 584.

## II. Referral to Medical Panel

¶ 21 Resort argues that the Commission erred in affirming both of the ALJ's medical panel referrals.[4] Resort argues that the matter should not have been referred to a medical panel because there was no conflicting medical evidence for the panel to consider and therefore no need to decide whether surgery was the proper medical care for Jones. Resort asserts that before a medical panel may be utilized, a significant medical issue must be created by conflicting medical reports.

¶ 22 Utah Code section 34A–2–601 provides that the Commission, in its discretion, "may refer the medical aspects of a [workers' compensation] case ... to a medical panel." Utah Code Ann. § 34A–2–601(1)(a) (Supp. 2009). However, "referral to a medical panel is *mandatory* only where there is a medical controversy as evidenced through conflicting medical reports." *Brown & Root Indus. Serv. v. Industrial Comm'n,* 947 P.2d 671, 677 (Utah 1997) (emphasis added); *see also* Utah Admin. Code R602–2–2(A) ("A panel will be utilized by the Administrative Law Judge where one or more significant medical issues may be involved.").

### A. First Medical Panel Referral

■ ¶ 23 Resort asserts that at the time of the first medical panel referral there was no medical controversy to send to the medical panel because all of the physicians agreed that surgery was not appropriate for Jones. In response, Jones contends that at the time the ALJ initially referred the matter to the medical panel, there were clearly conflicting medical reports. The evidence presented at the time of the hearing included Dr. Mooney's and Dr. Braun's reports both recommending against surgery for Jones and Dr. Hood's first report wherein he recommended surgery for Jones. At the time of the first referral to the medical panel there clearly was a disputed medical issue, i.e., whether Jones needed surgery and whether it was an appropriate treatment option.

¶ 24 Upon review of the first medical panel referral, the Commission found that "[b]ased on the evidence that was, in fact, presented [the ALJ] properly appointed a panel to evaluate the medical aspects of Ms. Jones'[s] claim." "Whether there are conflicting medical reports is a question of fact. We must uphold the Commission's factual findings if such findings are supported by substantial evidence based upon the record as a whole." *Brown & Root,* 947 P.2d at 677. The Commission found that, at the time of the hearing and the first referral to the medical panel, the medical opinions in evidence included Dr. Mooney's and Dr. Braun's reports both recommending against surgery and Dr. Hood's first report recommending surgery. Because Dr. Hood's opinion created a conflict among the medical opinions in the record, a medical panel was mandatory.

¶ 25 The Commission's factual findings regarding the medical controversy issue are clearly supported by the record, which at the time of the hearing contained conflicting medical reports. Accordingly, we hold that both a disputed medical issue as well as the discretion of the ALJ supported the Commission's decision that such a submission was appropriate does not exceed the bounds of reason and rationality.

### B. Second Medical Panel Referral

¶ 26 After approving the first referral, the Commission remanded the matter to the

---

3. We do, however, note that Resort provided Jones's full medical report to Dr. Hood, who produced a second report wherein he reversed his opinion and stated that had he obtained the entire record at the time of the consultation he would not have recommended surgery. This report was submitted to the ALJ and ultimately to the medical panel. Thus, it is difficult to see how submission of Dr. Hood's first report ultimately prejudiced Resort.

4. The ALJ first referred the matter to the medical panel after the January 2004 hearing wherein the parties presented the medical evidence. On remand from the Commission, the ALJ reopened the evidentiary record, admitted Dr. Hood's second report, and resubmitted the matter to the medical panel.

ALJ to determine whether the evidentiary record should be reopened to allow admission of Dr. Hood's second report. The ALJ decided to reopen the record, allowed the admission of Dr. Hood's second report, and resubmitted the matter to the medical panel. Resort asserts that the Commission erred by affirming the ALJ's decision to resubmit the matter to the medical panel. Specifically, Resort argues that the referral back to the medical panel for a second review was an error that grew out of the ALJ's erroneous decision to submit the matter to the medical panel in the first place. This argument is without merit. Given Dr. Hood's first report and the medical panel's assessment of the previously submitted records resulting in a surgical recommendation, balanced against Dr. Hood's second report not recommending surgery, the Commission's approval of a second submission by the ALJ did not exceed the bounds of reason and rationality.

### III. The Commission's Adoption of the Medical Panel Report

¶ 27 Resort next argues that the Commission erred in adopting the medical panel report as part of its factual findings because the report was not supported by a separate medical opinion. The Commission found that

> [t]he panel, consisting of three doctors who are experts in medical specialties relevant to Ms. Jones's claim, reviewed the preliminary findings of fact, the medical record, and both surveillance videos, and personally examined Ms. Jones. The panel then concluded that Ms. Jones's back condition was caused by the work injury, Ms. Jones

had not reached medical stability, and surgery was necessary to treat the injury. The [Commission] has reviewed the record and finds that the independent medical panel's opinion, which was formed after a review of the factual information and the medical evidence, is well reasoned, supported by the evidence, and persuasive.

¶ 28 In arguing that the medical panel's report is without any supporting medical opinion, Resort primarily criticizes the medical panel's assessment of Dr. Mooney's and Dr. Braun's evaluation of Jones and reiterates both of those doctors' general recommendations against surgery. Resort argues, in essence, that the findings in this case are arbitrary and capricious because the Commission adopted the findings of the medical panel recommending surgery rather than the opposing recommendations of Resort's medical experts.

¶ 29 The Commission, in deciding to adopt the medical panel's findings, considered the evidence, which included reports in conflict with the medical panel's recommendations, before it adopted the findings of the medical panel. The medical panel similarly considered all of the evidence, including reports from Dr. Mooney, Dr. Braun, and Dr. Hood, each recommending against surgery for Jones, and conducted its own evaluation of Jones, before giving its opinion that surgery is reasonable and necessary. The medical panel, in its March 24 report, explained the reasons it disagreed with the recommendations against surgery.[5] The Commission considered all the evidence, as it is required to do,[6] and ultimately found that the medical

---

5. The medical panel report discussed Dr. Mooney's report and explained that

> [t]he above listed findings on her radiologic diagnosis demonstrate there is significant back pathology, so I feel that the caution that is indicated by [Dr.] Mooney is certainly indicated, but in view of the fact that he was under the impression that she had minimal problems, I feel that one would have to reconsider his recommendations.

The medical panel further considered the uncertainty in Dr. Braun's recommendation against surgery. Dr. Braun, in his report, opined that [w]eighing all the factors available to me presently, I do not find Donna Jones to be a good surgical candidate at this time. Certainly this

should not condemn Donna Jones to nonoperative treatment or to any specific form of treatment, as she has the right to pursue additional surgical opinions. I would be happy to discuss the above with Donna and additionally to provide her with the names of both orthopedic and neurosurgeons in this community that would be able to provide her with appropriate additional opinions and recommendations regarding her condition.

6. It is the Commission's responsibility "to consider not only the report of the medical panel, but also all of the other evidence and to draw whatever inferences and deductions [that] fairly and reasonably could be derived therefrom." *Moyes v. State,* 699 P.2d 748, 753 (Utah 1985).

panel's opinions were more persuasive and that Jones is entitled to the recommended medical care as outlined in the medical panel's report. The record makes it clear that the Commission properly considered the differing recommendations regarding surgery and resolved these differences in Jones's favor. The record contains substantial evidence supporting the Commission's findings. We therefore affirm the Commission's factual findings.

### IV.   Commission's Denial of Resort's Motion for Remand

■ ¶ 30 Resort next argues that the Commission erred in refusing to grant Resort's request to remand this matter to the ALJ for an additional hearing concerning Jones's current medical status to determine if any physician was actually willing to perform the surgery. "A request for reconsideration of an Order on Motion for Review may be allowed and shall be governed by the provisions of [Utah Code s]ection 63G–4–302." Utah Admin. Code R602–2–1(O); *see* Utah Code Ann. § 63G–4–302 (2008) (providing parties twenty days after the date an order is issued to file a written request for reconsideration with the agency and stating that the agency shall issue a written order granting or denying the request and if no order is issued within twenty days after the filing of the request, the request for reconsideration shall be considered denied). The standard governing our review has been set out in *Kent v. Department of Employment Security*, 860 P.2d 984 (Utah Ct.App.1993). "[A]ppellate courts should employ an intermediate standard, one of some, but not total, deference, in reviewing an agency's application of its own rules." *Id.* at 986. We review the Commission's application of its rules for reasonableness and rationality. *See id.*

¶ 31 In its motion for reconsideration, Resort offered a new, more recent medical opinion from yet another doctor, Dr. Warren Stadler, recommending against surgery. Resort argued that because three years had passed since the Commission awarded benefits, including a finding that spinal surgery was needed, more recent information from Dr. Stadler indicated that Jones's circum- stances might have changed and, as such, the Commission should order a new evidentiary hearing to decide whether Jones still required surgery. The Commission reviewed the new medical opinion and determined that "the medical consultant based his opinion on the medical evidence that the medical panel already had reviewed." In other words, there was no *new* medical information, but simply a new opinion based on information already reviewed by the medical panel and the Commission. As a result, the Commission "decline[d] to reopen the evidentiary record to include [Dr. Stadler's] recent medical opinion on issues already decided."

¶ 32 The Commission's decision to deny a new evidentiary hearing following a new medical opinion on issues already decided is within the bounds of reasonableness and rationality. If the process of determining benefits were to require a new hearing following each new opinion, without requiring actual new information or status, the process would potentially never end. The Commission did act reasonably in reviewing the new medical opinion and then determining that the opinion did not provide new information regarding Jones's current status sufficient to necessitate a new evidentiary hearing. Accordingly, we affirm.

### CONCLUSION

¶ 33 Resort argues that the Commission erred by affirming the ALJ's decision to admit Dr. Hood's late-filed first report. The ALJ found that good cause existed for the admission of the late-filed medical report. The ALJ determined that based on the circumstances surrounding the filing of the medical report and medical exhibit that it was appropriate to admit the late-filed evidence. The ALJ acted reasonably, in the exercise of sound discretion, and we hold that it was not unreasonable or irrational for the Commission to conclude that the ALJ acted within the provisions of Utah Administrative Code rule 602–2–1(H)(5). As such, we affirm the Commission's determination to allow the late-filed medical report.

¶ 34 Resort further argues that the Commission erred by affirming the ALJ's decision in violation of administrative rules and

Resort's due process rights. Resort did not raise these particular arguments in proceedings before the administrative agency. Nor did Resort argue that plain error or exceptional circumstances exist to permit review. We therefore decline to reach these issues.

¶ 35 Resort asserts that the Commission erred by affirming the ALJ's decision to submit the matter to a medical panel. In undertaking a review of the Commission's findings of fact, "[we] will not overturn the Commission's factual findings unless they are arbitrary and capricious, or wholly without cause, or contrary to the one [inevitable] conclusion from the evidence." *McKesson Corp. v. Labor Comm'n*, 2002 UT App 10, ¶ 25, 41 P.3d 468 (second alteration in original) (internal quotation marks omitted). At the time the ALJ referred the matter to the medical panel, there were conflicting medical reports in the record. Accordingly, we conclude that the Commission's decision does not exceed the bounds of reason and rationality.

¶ 36 Resort next argues that the Commission erred in adopting the medical panel report, which recommended surgery, as part of its factual findings. Resort's argument centers around the fact that the report was not supported by the other medical opinions in evidence that recommended against surgery. The Commission, however, considered all of the evidence regarding the conflicting recommendations and found the medical panel report persuasive. We conclude that the record contains substantial evidence to affirm the Commission's adoption of the medical panel report and we decline to overturn the Commission's findings. *See id.*

¶ 37 Resort argues that the Commission erred in refusing to remand this matter to the ALJ concerning Jones's current medical status. In considering Resort's motion for reconsideration, the Commission reviewed the new medical opinion Resort filed and determined that it did not provide new information regarding Jones's current status sufficient to necessitate a new evidentiary hearing. The Commission's decision to deny Resort's motion for reconsideration was within the bounds of reasonableness and ra-

tionality. Accordingly, we affirm the actions and decisions of the Commission.

¶ 38 WE CONCUR: GREGORY K. ORME and STEPHEN L. ROTH, Judges.